# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 14, 2005 Session

## STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. BINTA AHMAD

### Appeal from the Juvenile Court for Coffee County
### No. 342-00J     Timothy J. Brock, Judge

### No. M2004-02604-COA-R3-PT - Filed April 26, 2005

Mother appeals termination of her parental rights to her two minor children. She and her two infant children immigrated to the United States illegally in 1998 when the children were two and one years of age, respectively. In 1999, Mother was arrested on felony theft charges. Being unable to make bond, she remained incarcerated for over a year following which she pled guilty to a felony. She was then turned over to immigration officials and was detained for an additional two years only to be deported to Nigeria in December 2002, where she remains. The children have remained in foster care for more than five years. Mother appeals claiming the evidence to be insufficient to prove grounds for termination and that termination is not in the children's best interest. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., and DONALD P. HARRIS, SP. J., joined.

Jeffrey D. Ridner, Tullahoma, Tennessee, for the appellant, Binta Ahmad.

Paul G. Summers, Attorney General and Reporter; and Joe Shirley, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

### MEMORANDUM OPINION[1]

The parental rights of the mother and the putative father of each of her two children were terminated. The putative fathers' parental rights were terminated on the grounds of abandonment.

---

[1]Tenn. Ct. App. R. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Neither putative father appeals. The mother's parental rights were terminated on the grounds of abandonment and failure to remedy persistent conditions. She appeals, raising four issues: (1) whether the Department proved grounds for termination by clear and convincing evidence; (2) whether the Department proved that it complied with its mandate to restore the family unit if possible; (3) whether the Department proved that it made reasonable efforts, and (4) whether termination was in the children's best interest.[2]

The genesis of the grounds for termination of mother's parental rights was when the mother was incarcerated in May 1999 for felony theft. Ever since then she has been unable to provide for her children or to remedy the conditions which led to the Department taking custody of her children.[3]

Following her arrest, the mother remained in jail for over a year because she could not make bond. After a lengthy incarceration, she pled guilty to a felony theft charge. Due to the fact she was an illegal immigrant and a convicted felon, she was not released. Instead, she was transferred to immigration officials who detained her pending deportation.

The mother and both of her children are illegal immigrants. She was born in Nigeria but claims she is an Egyptian citizen because her father was Egyptian; however, United States immigration officials concluded that she was a Nigerian citizen. The mother identified Andrew Oniha as the father of the older child and Anthony Ukpetnan as the father of the younger child. She states that she has neither seen nor heard from the children's fathers since leaving England in 1998. The putative fathers, whose last known addresses were in London, England, were named as defendants. They were served by publication in London, England; however, neither filed an answer.

Because the mother was unable to prove her citizenship to the satisfaction of U.S. immigration officials, they informed her that she would be deported to Nigeria. Prior to the scheduled deportation, the mother was presented with a dilemma no parent should have to face. It was not unlike the dilemma faced by the mother of an infant child when King Soloman was to decide which of two women was the mother of an infant. Though we cannot appreciate the difficulties she would experience attempting to raise two young children in Nigeria without assets, income, shelter or family, we assume it would be a most difficult, if not almost impossible, task. Her choices were limited to two heartrending options. She made a decision she believed to be in the best interest of her children, that they remain in the custody of the Department with the foster family in Tennessee.

---

[2]Throughout these proceedings, the mother has either been incarcerated on the felony charges, awaited deportation or resided in Nigeria following deportation. She was fortunate to have been ably represented by Jeffrey D. Ridner who has zealously advocated on her behalf.

[3]A family friend cared for the children for several months following her incarceration. When it became apparent that the mother was not going to be released from jail, the friend contacted the Department in July of 2000, advising that he was no longer able to provide constant care for them.

Since her deportation to Nigeria, the mother has been unable to remedy the conditions which necessitated the Department taking custody of her children.[4] The Department has had custody of the children since September of 2000 because there was no family member or friend available to properly care for the children while she was incarcerated. Due to her incarceration, which was in Alabama, and her detention by immigration officials, which was in Louisiana, the children have only been able to visit with their mother twice in the last six years, which is more than half of each child's life.[5]

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993). This right is superior to the claims of other persons and the government, yet it is not absolute. A court may terminate a parent's parental rights if it finds by clear and convincing evidence that one of the statutory grounds for termination of parental rights has been established and that the termination of such rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re A.W.*, 114 S.W.3d 541, 544 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000).

In an effort to balance the important, fundamental rights of a parent and the best interest of a child, our legislature has provided that parental rights may only be terminated for specific, well-defined grounds. *In re A.W.*, 114 S.W.3d at 544. The statutory grounds for termination of parental rights are set forth within Tenn. Code Ann. § 36-1-113(g). The existence of any one of the statutory grounds is sufficient to support a trial court's decision to terminate parental rights. *In re C.W.W.*, 37 S.W.3d at 473; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). One of those grounds is failure to remedy persistent conditions. Tenn. Code Ann. § 36-1-113(g)(3).

The statute provides for termination when the child has been removed from the home of the parent by order of a court for a period of six (6) months and

> (i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

---

[4] It is most tragic that Mother could not prove she was an Egyptian citizen. If she had, then she and her children could have been deported together to Egypt. However, since she did not prove her citizenship, immigration officials concluded that she was a Nigerian citizen and deported her to Nigeria. Because of concerns for the children's safety in Nigeria, she requested that her children not be deported to Nigeria. Her plan was to relocate to a safe country and reclaim her children.

[5] The two visits were facilitated by the Department and were in the penal facility in Alabama.

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. §36-1-113(g)(3)(A). The record provides clear and convincing evidence to support the finding that the mother has been unable to provide for the children for more than six years, that she has been unable to remedy the conditions which led to the removal of her children, and that there is little likelihood, if any, that these conditions will be remedied at an early date.[6] That is sufficient to establish one ground for termination, *See State v. Layne*, No. M2001-00652-COA-R3-JV, 2002 WL 126320 (Tenn. Ct. App. Feb. 1, 2002), and the existence of any one of the statutory grounds will support a termination of parental rights. *In re C.W.W.*, 37 S.W.3d 467, 473-74 (Tenn. Ct. App. 2000) (citing *In re M.C.G.*, No. 01A01-9809-JV-00461, 1999 WL 332729, at *5 (Tenn. Ct. App. May 26, 1999); *Department of Children's Servs. v. Darr*, No. 03A01-9706- JV-00213, 1998 WL 128874, at *3 (Tenn. Ct. App. Mar. 24, 1998).

The reasonableness of the efforts of the Department is disputed. Mother claims the Department did little other than write a few letters and make a few phone calls. She also complains that there was no continuity of effort due to three different case managers having worked the case. The Department claims it made reasonable efforts but was thwarted at every front due to international roadblocks.

While the Department's efforts do not appear to be Herculean, they were reasonable under the circumstances. Moreover, it is most apparent that no matter how zealous its efforts, the reunification of the family unit, or placement with a family member, were beyond the control of the Department due to the international constraints over which the Department had no control. The outcome of this case was predominately affected by matters beyond the control of the Department. Particularly, the criminal courts of Alabama, the U.S. and British immigration officials, and the mother's inability to establish her citizenship and that of her two children. All of these contributed to determine the outcome of this case. Moreover, the mother was unable to provide current or accurate information to identify or locate either father of the children. She had not kept in touch with either father and had no knowledge of their home address or employment. Furthermore, she could not provide any information on the citizenship of either father which greatly diminished the efforts of all involved to relocate the children with the mother's cousin in England.[7] As a result, the only option was to deport the children with their mother or allow them to remain with the foster parents in Tennessee.

---

[6] The statute only requires a minimum period of six months. Tenn. Code Ann. § 36-1-113(g)(3)(A).

[7] This is because the mother and the Department could not prove the children were British citizens and England would not permit the children to return to that country. Unless the mother and the Department could prove the parentage of the putative fathers and that they were British citizens, and therefore the children were too, no amount of efforts, reasonable or well above and beyond reasonable, would have saved the day.

The final issue is whether termination of the mother's parental rights is in the best interest of the children. It is sufficient if the children have been in foster care for more than six months and, as here, the parent has been and remains unable to provide and maintain stable housing and to provide adequate support for the children and there is no likelihood that these conditions will be remedied at an early date. Tenn. Code Ann. §36-1-113(g)(3). Further, it is evident that the children would suffer emotionally from a change of caretakers because the children have been in a stable home environment for six years and have only seen their mother on two occasions during this period. We fully recognize this to be a tragic case; nevertheless, it is most evident that it is in the children's best interest to terminate the mother's parental rights in order to extinguish what has been six years of purgatory to make the children available for adoption.

Perhaps termination of the mother's parental rights would not have been necessary had the mother not migrated illegally to the United States, or had she not committed a felony in Alabama, or had she been able to prove that she was an Egyptian citizen or that the children were British citizens. However, putting all the "ifs, ands or buts" aside, what we are faced with is a mother who was vanquished to Nigeria and who is unable to remedy the conditions that led to the Department having to take custody of the children, and two minor children whose lives have been in limbo for six years.

As tragic as this case is, we are not unmindful of what appears to be a silver lining, that is the children have been residing this entire time with foster parents who desire to adopt both children. This silver lining makes it obvious that it is in the children's best interest to terminate the mother's parental rights in order to make the children available for adoption.

In conclusion, we hold that the Department has proven by clear and convincing evidence grounds for termination, failure to remedy persistent conditions, and that termination of parental rights is in the children's best interest. Therefore, the judgment of the trial court is affirmed and this matter is remanded with costs of appeal assessed against the Department of Children's Services.

_____
FRANK G. CLEMENT, JR., JUDGE

-5-