IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
November 7, 2002 Session
Heard at Cleveland[1]


# JAMES LEE JONES, III, ET AL. v. PIERCE BRANDON GARRETT a/k/a PERRY GARRETT


**Appeal by Permission from the Court of Appeals**
**Circuit Court for Hamblen County**
**No. 98-CV-059      Kindall T. Lawson, Judge**

---

**No. E2000-00196-SC-R11-CV - Filed December 30, 2002**

---

This case arises from a proceeding to terminate parental rights. In that proceeding, the prospective adoptive parents sought a determination that the father of the child in their custody had abandoned him. The trial court terminated the father's parental rights, and the Court of Appeals affirmed the termination. We granted permission to appeal to determine whether the trial court erred in terminating parental rights on the basis of Tennessee Code Annotated section 36-13-113(g)(8)(A)(vi) (1996 & Supp. 1999) (failure to file a petition to establish paternity within thirty days after notice of alleged paternity by the child's mother) when the father had been adjudicated the legal parent of the child at the time of the hearing. We hold that Tennessee Code Annotated section 36-1-113(g)(8)(A)(vi) applies only to cases in which no legal relationship between the parent and child has been established.

### Rule 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Case Remanded

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Douglas R. Beier, Morristown, Tennessee, for the appellant, Pierce Brandon Garrett.

Jonathan R. Perry and Laura D. Perry, Franklin, Tennessee, for the appellees, James Lee Jones, III and Stephanie Trent Jones.

---

[1]This case was heard as part of the November 7, 2002 S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project in Cleveland, Bradley County, Tennessee.

**OPINION**

## I. Factual and Procedural Background

On January 30, 1998, Amy Michelle Penland gave birth to a baby boy. Penland and the child's father, Pierce Brandon Garrett (a/k/a Perry Garrett), never resided together and were never married. On the date of the child's birth, the child was placed in the physical custody of James Lee Jones, III and his wife, Stephanie Trent Jones, pursuant to an Order of Guardianship. Penland voluntarily surrendered her parental rights to the child on February 2, 1998. On February 13, 1998, Mr. and Mrs. Jones filed a petition to adopt Caleb Luke Jones (a/k/a Baby Boy Penland). On April 9, 1998, the Joneses filed an amended petition adding Garrett as a party to the proceeding. The petition sought to terminate Garrett's parental rights due to his abandonment of the child pursuant to Tennessee Code Annotated section 36-1-102.

On May 26, 1998, in a separate proceeding, Garrett filed a Petition to Establish Parentage. Garrett initially resisted service of process of the Joneses' amended petition. On August 12, 1998, however, he filed an answer to the petition seeking to terminate his parental rights, denying that he abandoned his son. On February 5, 1999, an Agreed Order was entered declaring Garrett to be the legal and biological father of the child.

On June 23, 1999, more than four and one-half months after Garrett had been declared the legal and biological father of the child, a hearing was held in the Hamblen County Circuit Court on the Joneses' petition to terminate Garrett's parental rights. The proof at the hearing revealed that Garrett and Penland had engaged in unprotected sex from January of 1997 to June of 1997. Penland learned in late May of 1997 that she was pregnant. Garrett moved to Florida in August of 1997. Penland testified that although she attempted to "hint" to Garrett that she was pregnant, she did not unequivocally tell Garrett that she was pregnant with his child until October of 1997 during a telephone conversation. This conversation was verified by at least one witness. Penland testified that Garrett did not believe the child was his. When Penland and her mother contacted Garrett in January of 1998 asking him to sign a parental surrender form, he refused.

Garrett claimed that Penland never told him unequivocally that he was the child's father. He asserted that his cousin told him that Penland was pregnant in December of 1997. Garrett said that Penland told him she was unsure who the father was when he spoke with her in December of 1997. Garrett testified that a Caucasian man whom Penland was then dating claimed to be the child's father. Garrett stated that he thought this other man was the father of Penland's child until Garrett saw the child's photograph in May of 1998. Because the child is biracial, Garrett ultimately concluded that the child was his. (Garrett is African-American and Penland is Caucasian.) After seeing the photograph of his child, Garrett contacted an attorney and filed a petition asking to be declared the child's father and asking for custody.

On August 13, 1999, the trial court terminated Garrett's parental rights. The Joneses' petition to terminate Garrett's parental rights asserted that he had abandoned his child under Tennessee Code

Annotated section 36-1-102, and abandonment was clearly the issue at trial. However, the trial court made no finding regarding abandonment. Instead, the trial court found that Garrett failed to file a petition to establish paternity within thirty days after receiving notice from the child's mother that he was believed to be the father of the child pursuant to Tennessee Code Annotated section 36-13-113(g)(8)(A)(vi) and terminated his parental rights on this ground. The Court of Appeals affirmed the ground for termination, but remanded the case to the trial court for a determination as to whether the termination of Garrett's parental rights was in the child's best interests. We granted permission to appeal to determine whether the trial court erred in terminating parental rights on the basis of Tennessee Code Annotated section 36-13-113(g)(8)(A)(vi) (1996 & Supp. 1999)[2] (failure to file a petition to establish paternity within thirty days after notice of alleged paternity by the child's mother) when the person whose parental rights were terminated had been adjudicated the father of the child at the time of the hearing.

## II. Standard of Review

Appellate review of non-jury cases is de novo upon the record, accompanied by a presumption of correctness, unless the evidence preponderates against the trial court's factual findings. See Tenn. R. App. P. 13(d). A parent's rights may not be terminated unless a court finds that one or more of the statutorily defined grounds for termination has been established by clear and convincing evidence. See Tenn. Code Ann. § 36-1-113(c)(1) (1996 & Supp. 1999). We must, therefore, apply this heightened standard to our review of the trial court's factual findings. Conclusions of law, however, are reviewed under a pure de novo standard, according no deference to the conclusions of law made by the lower courts. See Bank/First Citizens Bank v. Citizens & Assocs., 82 S.W.3d 259, 262 (Tenn. 2002).

## III. Analysis

The grounds for terminating parental rights in Tennessee are defined by statute. See Tenn. Code Ann. § 36-1-113(c) (1996 & Supp. 1999). In this case, the ground for termination of parental rights was Tennessee Code Annotated section 36-1-113(g)(8)(A)(iv), which provides:

> (8)(A) The parental rights of any person who is not the legal parent or guardian of a child . . . may also be terminated based upon any one (1) or more of the following additional grounds:
>
> .  .  .

---

[2]Since the time of the trial court's hearing in this case, some subsections of Title 36 of the Tennessee Code Annotated have been renumbered. For example, Tennessee Code Annotated section 36-1-113(g)(8)(A)(vi) is now codified at Tennessee Code Annotated section 36-1-113(g)(9)(A)(vi) (2001). In this opinion, we will refer to sections of the Tennessee Code Annotated as they appeared at the time of the trial court's hearing in 1999 or as they were codified.

(vi) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity by the child's mother . . . .

(Emphasis added). Notice of alleged paternity by the child's mother includes "the oral statement to an alleged biological father from a biological mother that he is believed to be the biological father of her child." Tenn. Code Ann. § 36-1-113(g)(8)(B)(ii) (1996 & Supp. 1999).

Penland testified that she informed Garrett in October of 1997 that she believed he was the biological father of her child. The trial court concluded that Garrett's parental rights should be terminated because he had notice of his alleged paternity as defined by Tennessee Code Annotated section 36-1-113(g)(8)(A)(ii)[3] and did not file a petition to establish paternity within thirty days after receiving such notice as required under Tennessee Code Annotated section 36-1-113(g)(8)(A)(vi). Implicit in the trial court's ruling is the rejection of Garrett's testimony that he did not receive such notice from Penland. This Court accords deference to the trial court's determinations regarding credibility. See Wells v. Tennessee Bd. of Regents, 9 S.W.3d 779, 783 (Tenn. 1999) (stating that "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary."). Accordingly, we find no error in the trial court's determination that Garrett received notice of his alleged paternity as defined under Tennessee Code Annotated section 36-1-113(8)(B)(ii).[4]

Garrett asserts, however, that Tennessee Code Annotated section 36-1-113(g)(8)(A)(vi) does not apply to him because in a prior proceeding he was found to be the legal and biological father of the child. He argues that Tennessee Code Annotated section 36-1-113(g)(8)(A)(vi) applies only to cases in which no legal relationship between the parent and child has been established. We agree.

This Court's primary objective in interpreting statutes is "to ascertain and give effect to the intention and purpose of the legislature." Lipscomb v. Doe, 32 S.W.3d 840, 844 (Tenn. 2000). Legislative intent is best determined by looking at the natural and ordinary meaning of the words used by the General Assembly in the statute. See Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000). This Court must "presume that the legislature says in a statute what it means and means in a statute what it says there." Id. at 307 (citation omitted). "When the language of the statute is clear and unambiguous, then this Court usually applies the plain language of the statute to resolve the issue." Lipscomb, 32 S.W.3d at 844. Therefore, our analysis of a statute's meaning must begin with the statute itself.

---

[3] At the time of the hearing in this case, the correct citation to the section of the statute referring to notice was Tennessee Code Annotated section 36-1-113(g)(8)(B)(ii) (1996 & Supp. 1999).

[4] In addition to finding by clear and convincing evidence that one or more of the statutory grounds for termination of parental rights exists, a court must find that termination of the parent's rights is in the best interests of the child. See Tenn. Code Ann. § 36-1-113(c)(2) (1996 & Supp. 1999). We agree with the Court of Appeals that the trial court erred in failing to make a best interests determination.

Tennessee Code Annotated section 36-1-113(g)(8)(A) enumerates "additional grounds" for terminating parental rights. Tennessee Code Annotated section 36-1-113(g)(8)(A) expressly states that these "additional grounds" for terminating parental rights do not apply to "the legal parent or guardian of [the] child." By excluding legal parents from its grounds for termination, this statute affords legal parents a heightened level of legal protection concerning their parental rights. One of the definitions of "legal parent" is "a man who has been adjudicated to be the legal father of the child . . . ." Tenn. Code Ann. § 36-1-102(26)(D) (1996 & Supp. 1999). The legislature's use of the present tense ("is not the legal parent") indicates that the grounds for terminating parental rights under Tennessee Code Annotated section 36-1-113(g)(8)(A) do not apply to persons who are legal parents at the time of the proceeding. Clearly, Garrett meets the definition of "legal parent" because he was adjudicated to be the father of Penland's child prior to the proceeding which resulted in the termination of his parental rights. Thus, we find that the plain language of Tennessee Code Annotated section 36-1-113(g)(8)(A) supports Garrett's contention that the statute is inapplicable to him.

Furthermore, Tennessee Code Annotated section 36-1-117(b) shows a clear preference for determining paternity prior to considering a petition to terminate a father's parental rights pursuant to Tennessee Code Annotated section 36-1-113. Tennessee Code Annotated section 36-1-117(b) provides that a petition filed to establish paternity of a child who is the subject of an adoption proceeding must be heard prior to any action to determine whether to grant a petition for adoption. If the petition to establish paternity is granted, Tennessee Code Annotated section 36-1-117(b)(3)(B) provides that

> the parental rights of the legal father must be terminated as provided by § 36-1-113 or as otherwise provided by law, or the legal father must execute a surrender under the provisions of § 36-1-111, file a parental consent, or the legal father must co-sign the petition for adoption pursuant to the provisions of subsection (f) before the court may be authorized to order an adoption of the child.

A father who establishes paternity prior to a termination proceeding should be permitted to enjoy the benefit of having established paternity. One such benefit is to be exempt from the additional grounds for terminating parental rights under Tennessee Code Annotated section 36-1-113(8)(A). After a father has been granted an adjudication of paternity, it is incongruous to terminate his parental rights because he failed to timely file a petition to establish paternity.

Moreover, the trial court's construction of the statute is inconsistent with this Court's holding in Nale v. Robertson, 871 S.W.2d 674 (Tenn. 1994). We held that "the state and federal constitutions require that the natural father's parental rights be determined before the court may proceed with the issue of adoption." Id. at 680. This holding is based on the fact that the biological connection between a parent and child offers a biological father the chance to grasp the opportunity to develop a relationship with his child. See id. at 679.

In this case, we find that Garrett pursued his "opportunity interest" and was, in fact, adjudicated the legal parent of the child. Once Garrett's paternity was adjudicated, his failure to file a petition to establish paternity within thirty days after receiving notice from the child's mother that she believed him to be her child's father is of no consequence. Thus, the trial court erred in terminating Garrett's parental rights on the basis of his failure to timely file a petition to establish paternity.

## IV. Conclusion

For the foregoing reasons, we hold that Tennessee Code Annotated section 36-1-113(g)(8)(A)(vi) (1996 & Supp. 1999) applies only to cases in which no legal relationship between the parent and child has been established. Because Garrett was adjudicated the legal parent of the child before the proceeding which resulted in the termination of his parental rights, Tennessee Code Annotated section 36-1-113(g)(8)(A)(vi) is inapplicable. Therefore, the trial court erred when it terminated Garrett's parental rights on the basis of this provision. Accordingly, we reverse the judgment of the trial court. Because the trial court pretermitted the issue of abandonment, we remand the case for consideration of that issue.

Costs of this appeal are taxed to the appellees, James Lee Jones, III and Stephanie Trent Jones, for whom execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE