IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 1, 2003

*In The Matter Of: T.B.S. and A.K.S.*
**STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v.
NANCY KATHERINE JOHNSON SHORTT, ET AL.**

**Appeal from the Juvenile Court for Jackson County
No. 4075A-3-123 and 4075B-3-123     Jimmy White, Judge**

---

**No. M2002-02920-COA-R3-JV - Filed June 10, 2003**

---

This case concerns the question of what constitutes reasonable efforts to reunify dependent and neglected children with the birth parents prior to the termination of parental rights. The trial court held that reasonable efforts were made. This Court affirms the termination as to both parents' rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Michael Savage, Livingston, Tennessee, for the appellant, Nancy Katherine Johnson Shortt.

Paul G. Summers, Attorney General & Reporter, and Elizabeth C. Driver, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

The Tennessee Department of Children's Services commenced this action by filing a Petition for Temporary Custody on May 17, 2000. In that Petition, the State averred the following as grounds for temporary custody:

I

It is upon Petitioner's information and belief that the above-named children are dependent and neglected children within the meaning of the law in that [T.S.] and [A.S.] have previously been in Foster Care due to chronic neglect caused by their mother's mental limitations and inability to parent and their father's alcoholism. The children were returned to the custody of the parents on 7-19-1999 with restrictions that the children should not be left alone with Nancy Shortt and the father not to consume any alcoholic beverage.

On 5-15-2000, a report was received by DCS that Mr. Marvin Shortt was highly intoxicated. Patricia Green, Case Manager, DCS and Jackson County Chief Deputy, David Pigg went to the house and observed Mr. Shortt in an intoxicated condition. Nancy Shortt and the children were at the home of her mother, Mary Johnson Boles, who the department does not consider to be a proper custodian of children due to her allowing Nancy Shortt to be sexually abused. Nancy's mental limitations prevent her from properly [caring] for the children. Marvin Shortt has a history of drunken binges which prevented him from properly caring for the children . . . .

This petition was accompanied by an affidavit as required by Tennessee Code Annotated section 37-1-166(c). In that affidavit the State alleges that these children were previously in state custody and were returned to the parents on July 19, 1999. Counsel and guardian ad litem were appointed and a Protective Custody Order entered on May 17, 2000.

The Department drafted, and Mrs. Shortt signed parenting plans for T.B.S. and A.K.S. on June 15, 2000. On page 4 of T.B.S.'s parenting plan, the barrier to permanency is listed as "Mrs. Shortt has a psychiatric disorder and developmental disability that seriously impairs the ability to meet the children's needs. The children have long history with DCS. The children were removed during another incident when [A.K.S.]'s formula tested positive with 0/25 V/V%." Also listed under the required change portion of the action plan for permanency is the following condition. "Mrs. Shortt's condition must be stabilized and she must consistently demonstrate specific skills that show her ability to parent her child-children (12-01-00)." This plan was approved by the juvenile court on July 24, 2000. A.K.S.'s plan was approved on the same day and contains the same barrier and suggested plan of action. In addition, on page nine of A.K.S.'s parenting plan the state lists the following as barrier to permanency: "The marital relationship of Mr. Shortt and Mrs. Shortt poses a risk to the children as evidenced by reports of Marvin emotionally abusing Nancy through verbal comments and by the fact that he was picked up on 08-24-96 due to being intoxicated and he was afraid he would harm Nancy and [T.B.S.]." Pursuant to the parenting plans executed by the department and the parents, Mrs. Shortt was to receive psychological evaluation.[1] The final hearing on the petition was postponed several times for the purpose of obtaining a psychological evaluation of the mother and so that the father could attend Alcoholic's Anonymous meetings and alcohol and drug treatment. The adjudication and disposition hearing of this petition for temporary custody occurred on November 7, 2001. In its order filed July 22, 2002 the trial court found that the children were dependent and neglected within the meaning of the statutes:

Upon the evidence presented, argument of counsel, and the entire record, from all of which the Court finds that the above-named children are dependent and neglected within the meaning of the law; and victims of severe child abuse perpetrated by Marvin Shortt; that Nancy Shortt's mental incapacity renders her

[1] Although these plans were subsequently amended, these barriers and action plan were in the subsequent plans as well.

-2-

unable to parent and care for the children; and due to Marvin Shortt's alcoholism, failure to properly control and parent the children, physical violence and sexual abuse or exploitation of the children; that there is no less drastic alternative to removal and/or to make it possible for the children to return home in that the D.C.S. entered into a safety plan while the children were in the parents' home; but the parents' violation of that safety plan necessitated the children being returned to foster care; continuation of the children in the parent or legal guardian's custody is contrary to the best interest of the children; and that it is in the best of said children and the public . . . that the State of Tennessee, Department of Children's Services, retain temporary legal custody of said minor children along with the authority to consent to necessary medical, surgical, hospital, institutional care, or educational enrollment, pending further order of this Court.

Consistent with prior orders of the Court, Dr. William R. Sewell preformed an evaluation of the Appellant mother, Nancy Katherine Shortt, on June 8, 2001. In that evaluation the doctor made the following recommendations:

It is recommended that if the Department of Children's Services decides to return the children to this home that there be a functional adult as a care manager for the children. Ms. Shortt's level of intelligence, her tendency toward erratic emotional expressions, her weakness in demonstrating satisfactory disciplinary measures in parent-child settings, her unwillingness to engage in treatment, and her dependent personality characteristics indicate that counseling be recommended in this case. However, it should be noted that the success of counseling would be extremely limited due to the low intellectual level, lack of trust of others and unwillingness to engage in treatment activities.

On April 30, 2002, the Department filed a Petition for Termination of Parental Rights alleging as grounds for the termination the parental rights of Marvin Shortt, willful failure to visit or to contribute to the support of the children.[2] The Department alleged that Nancy Katherine Shortt, along with Marvin Shortt, made no reasonable efforts to provide a suitable home. In addition, the Department alleged the following facts:

The Defendant (mother), Nancy Katherine Shortt, has not substantially complied with the provisions of the permanency plan, which is attached as Exhibit A. Specifically, she has not successfully completed parenting classes, she has not stabilized her condition or demonstrated her ability to properly parent her children, she continues to have relationships with men and A&D issues and she has not participated in a domestic violence course.

---

[2] Marvin Shortt is not before the Court on appeal of the termination order. The Mother Nancy Katherine Shortt is the only party appellant.

Nancy Katherine Shortt was advised on June 15, 2000 and May 21, 2001 that failure to comply with permanency plan was grounds for termination of parental rights.

The Defendant (father), Marvin Lloyd Shortt, has not substantially complied with the provisions of the permanency plan, which is attached as Exhibit A. Specifically, he has not successfully completed A&D treatment, he continues to consume alcoholic beverages, he refuses to go for a psychosexual evaluation, he has not successfully completed parenting classes, he has not completed counseling for domestic violence and he has not visited the children as required.

Marvin Lloyd Shortt was advised on June 15, 2000 and May 21, 2001 that failure to comply with the permanency plan was grounds for termination of parental rights.

This Petition was heard on July 22, 2002. Although counsel for the mother was present, the mother absented herself from the proceedings. As a result the court heard testimony from the mother's case worker Angelia Bullock and Nancy Kington, the children's foster mother. In addition, the court considered the deposition of Dr. Sewell and Dr. Sanger. Of particular interest is the testimony of Angelia Bullock. Upon direct examination by Ann Austin counsel for the Department, Ms. Bullock gave the following testimony concerning the efforts taken by the Department and by Ms. Shortt concerning establishing home for the children:

Q. During the four months following removal on May 17th, 2000, did the Department of Children's Services make every reasonable effort to provide services to Marvin Lloyd Shortt and Nancy Katherine Shortt to assist them in establishing a home suitable for these children?

A. Yes.

Q. And did they, were they able to make or did they make reasonable efforts themselves to establish a suitable home for these children?

A. No.

Q. And does it appear likely that they will be able to establish a suitable home for their children in the near future?

A. No.

Q. Nancy Katherine Shortt, is it true that she has not substantially complied with the provisions of her permanency plan?

A. Yes.

Q. She's not successfully completed parenting classes, has she?

A. No.

Q. And she's not stabilized her condition or demonstrated an ability to properly parent the children, is that correct?

A. Yes, that's correct.

Q. Does she continue to have relationships with men with alcohol and drug issues and who are also violent towards her?

A. Yes.

Q.      Tell us the last incident she has told you, Nancy Shortt, regarding a paramour, a live-in paramour that had alcohol or drug issues and violence towards her.

A.      Yes. She's [sic] currently has a paramour that lives with her. I don't know if you want me to say his name or not.

Q.      Go ahead.

A.      Jerry Byrd Smith is his name. And I sort of had my suspicions that he may drink and stuff when I'd do visits. Because he would shake uncontrollably and all of that stuff. Well, she admitted to me - - it was in May, the month of May.

Q.      May of 2002?

A.      Yes, of this year. That he does physically abuse her. And even worse when he drinks liquor, she said.

. . . .

Q.      And the Court at the last hearing made a finding that he did; they were victims of severe child abuse based on this sexual abuse, is that correct?

A.      Yes.

Q.      Based on your observations of Katherine, Nancy Katherine Shortt, is she mentally competent to provide for the care of these children?

A.      No.

Q.      What have you seen that concerns you about her competency to care for these children?

A.      Appointments that I've made for her, I would be concerned. Because she won't get on the bus, or she forgets. [T.] and [A.] both have to see a psychiatrist once a month. And I would be so scared that she wouldn't get them to their appointments every month, as well as school. Her friend, Melissa, pays all of her bills for her. Her neighbor friend, Melissa. And gives her the change left over. Because Ms. Shortt told me she can't count.

Q.      Let me interrupt you. Is this friend Melissa an individual who provides her transportation to court and other places she needs to go?

A.      Yes. She takes her yard-saling, too, every Saturday.

Q.      Go ahead.

A.      That would be my concern, that she wouldn't be able to get them to these appointments. My other concern, of course, is living with Mr. Jerry Byrd Smith. He's still on her lease at the subsidized housing she lives at.

Q.      Let me interrupt a minute there. Have there been other men that Ms. Shortt had live with her or stay in her home for periods of time that have also caused you concern before Mr. Smith came into the picture?

A.      Oh, yes. There was another male figure. I'll have to look at the paperwork. It was sometime last year that when I did a home visit, he was on the floor on a mattress. And when I knocked on the door, Nancy opened it. And he jerked the covers over him, and there was beer bottles laying around everywhere. His name was Bill Spivey. He is deceased now. Then there was another man that I went in on a home visit. And there was beer bottles laying everywhere, the quart-sized

beer bottles. And when I asked his name, she told me she didn't know his name. She couldn't remember.

> Q. Did she identify what his relationship was with her, this man?
>
> A. Yeah. That he was her new boyfriend. Yes.
>
> Q. In your opinion, is there any likelihood that these conditions would be remedied at an early date so the children can be returned to either parent in the near future?
>
> A. No.

The pertinent findings of fact as memorialized in the decree signed the 11th of October 2002 are as follows:

6.      Nancy Katherine Shortt has not demonstrated acceptable responses to typical child behavior and continues to live with men who abuse alcohol and abuse her. The Court finds that all of these requirements are reasonable and related to the reasons the children came into foster care or reasons that prevent the children from returning to Ms. Shortt's care. Both of these requirements are of significant importance in determining whether the children can be safely returned home. Ms. Shortt has complied with the requirement that she have a psychological evaluation and parenting assessment, but while these are necessary to determine if Ms. Shortt is capable of parenting children, compliance is not of significant importance as to whether the children can be safely returned to Ms. Shortt. Nancy Katherine Shortt has been substantially non-compliant with the statement of responsibilities in the permanency plans.

7.      The children have been removed from the custody of the parents more than six (6) months. The conditions that led to the children's removal still exist or other conditions exist which would in all probability subject the children to further neglect or abuse if returned home. There is little likelihood that these conditions will be remedied at an early date so that the children could be returned to the Defendant in the near future. The continuation of the parent/child relationship greatly diminishes the children's chances of early integration into a stable and permanent home. Nancy Katherine Shortt's mental incapacity to care for the children on her own and Marvin Lloyd Shortt's alcoholism are conditions that caused the children's removal that still exists. The deposition of William R. Sewell, Ph.D. was admitted as an exhibit. Dr. Sewell opined that Nancy Katherine Shortt was not capable of providing for the care of these children without extraordinary services, such as a competent adult living full time in the home with her and providing full time care for the

children. DCS is not required to have someone in the home 24 hours a day, seven days a week in order for Nancy Shortt to have the children live in her home. Other conditions also exist that prevent the children from returning home. The deposition of Maureen Sanger, Ph.D. was admitted as an exhibit. From the testimony of Dr. Sanger and the foster mother, Nancy Kington, there are sufficient facts to find that Marvin Shortt sexually abused these children. Nancy Shortt has admitted to Angie Bullock that she is currently living with a man who abuses alcohol and beats Nancy.

. . . .

10. It is in the best interest of these children that all the parental rights of said Defendants to said children be forever terminated and that the complete custody, control, and guardianship of said children be awarded to the State of Tennessee, Department of Children's Services, with the right to place said children for adoption and to consent to said adoption in loco parentis. Marvin Lloyd Shortt and Nancy Katherine Shortt have not made an adjustment of circumstances, conduct or conditions as to make it in the children's best interest to return to either's home in the foreseeable future. Marvin Shortt and Nancy Shortt's mental or emotional status would be detrimental to the children and prevent them from effectively providing for the care and supervision of the children . . . .

From the Order terminating her parental rights, Ms. Shortt appeals. Ms. Shortt argues on appeal that since no Affidavit of Reasonable Efforts was filed in the termination proceeding, no competent evidence exists of reasonable efforts taken on behalf of DCS to reunify the family. She relies on Tennessee Code Annotated section 37-1-166(c), which states:

To enable the court to determine whether such reasonable efforts have been made the department, in a written affidavit to the court in each proceeding where the child's placement is at issue, shall answer each of the following questions: (1) is removal of the child from the child's family necessary in order to protect the child, and, if so, then what is the specific risk or risks to the child or family that necessitates removal of the child?; (2) What specific services are necessary to allow the child to remain in the home or to be returned to the home?; (3) What services have been provided to assist the family and the child so as to prevent removal or to reunify the family?; and (4) Has the department had the opportunity to provide services to the family and the child, and, if not, then what are the specific reasons why services could not have ben provided?"

It is well settled that the fundamental rights to care, custody and control of children as enumerated in *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), are not absolute. Upon clear and convincing evidence showing that the best interests of the children would be served by the termination under the applicable statute, these rights may be terminated. *See Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re: Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988); *Tennessee Dep't of Human Services v. Riley*, 689 S.W.2d 164, 165 (Tenn. Ct. App. 1984). *See also, Riley*, 689 S.W.2d at 169. Clear and convincing evidence establishes ample grounds for terminating the parental rights of Nancy Katherine Johnson Shortt. *In Re C.W.W.*, 37 S.W.3d 467, 474 (Tenn.Ct.App. 2000). The court had ample evidence of the efforts taken by the Department to secure counseling, evaluation and treatment with an uncooperative mother. The court likewise had ample evidence of the mother's continued behavior contrary to that provided for in the permanency plans. This Court's Eastern Section considered this argument in *State of Tennessee, Dep't of Children's Services v. Malone*, No. 03A01-9706-JV-00224, 1998 WL 46461 * 1-2 (Tenn. Ct. App. E.S., Feb. 5, 1998). In considering that argument the Court found the proper standard that enumerated in section 113 to be:

> (1) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> * * *
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> Tenn. Code Ann. § 36-1-113(i)(2)(2002).

This standard has been uniformly applied throughout the state. *See generally In Re C.W.W.*, 37 S.W.3d 467 (Tenn. Ct. App. 2000); *Stokes v. Arnold*, 27 S.W.3d 516 (Tenn. Ct. App. 2000); *see also Jones v. Garrett*, 92 S.W.3d 835 (Tenn. 2002).

Having reviewed the record on appeal this Court finds that clear and convincing evidence exists to support the finding of the trial court and the termination of mother's rights. The Order of the court is affirmed in all respects; the cause is remanded for further proceedings as necessary.

Costs of this cause are assessed against Appellant.

_____
WILLIAM B. CAIN, JUDGE