# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### ASSIGNED ON BRIEFS MAY 7, 2009

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. TINA TEMPLE, ET AL.

### IN RE: B.T., d.o.b 03/02/1993
### J.R.T., d.o.b. 08/04/1995
### J.L.T., d.o.b. 04/29/1997
### J.B.T., d.o.b. 12/23/1998
### J.A.T., d.o.b. 03/01/2003

## Children Under 18 Years of Age

**Direct Appeal from the Juvenile Court for Shelby County**
**No. R3018     Herbert J. Lane, Special Judge**

_____

**No. W2008-02803-COA-R3-PT - Filed November 5, 2009**

_____

**DISSENT**

_____

HOLLY M. KIRBY, J., DISSENTING:

I must respectfully dissent from the majority opinion in this case. Specifically, I disagree with the majority's analysis of the grounds for termination of the parental rights of persons who are not legal parents, under T.C.A. section 36-1-113(g)(9), and with the conclusion that DCS was required to prove that it gave Father sufficient aid as to those grounds.

In this case, DNA testing has shown that Father is the biological parent of three of the five children at issue, and that he is not the biological father of two of the five. It is undisputed he has not filed a petition to establish his paternity as to any of the children, and thus is not the legal parent of any of them. *See* T.C.A. § 36-1-102(28)(D) (2005).

Under the parental termination statutes the parental rights of legal parents are afforded a heightened level of protection. *See Jones v. Garrett*, 92 S.W.3d 835, 839 (Tenn. 2002). The termination statutes also include grounds for terminating the parental rights of other persons who may assert parental claims to a child but whose parentage has not been legally established, referred to by the majority as "non-legal parents." This can include not only a biological father whose parentage has not been legally established, but also a person listed on the putative father registry, a

person who has not undergone DNA testing but who claims to be the biological father, or a person who has been identified as the biological father by the biological mother. *See* T.C.A. § 36-1-117(b), (c) (2005).

The termination statutes outline separate grounds for termination applicable to such "person[s]." *See* T.C.A. § 36-1-113(g)(9)(A) (2005).[1] Compared to the "heightened level of protection" afforded to legal parents, the grounds for terminating the parental rights of persons who are not legal parents have been described by Tennessee courts as "less stringent" and "less difficult to prove." *See In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at \*4 (Tenn. Ct. App. Oct. 30, 2007) ("less stringent"); *In re H.A.L.*, No. M2005-00045-COA-R3-PT, 2005 WL 954866, at \*9 (Tenn. Ct. App. Apr. 25, 2005) ("less difficult to prove"); *In re S.M.*, 149 S.W.3d 632, 641 (Tenn. Ct. App. 2004) ("heightened level of protection" for legal parents). Presumably this is because a familial relationship between the person and the child at issue has not been established. *See State v. Osborne*, No. 01A01-9810-JV-00564, 1999 WL 557543, at \*4 (Tenn. Ct. App. Aug. 2, 1999).

Tennessee court have demonstrated a reluctance to apply these "less stringent" grounds to persons whom DNA tests show to be the biological father of the child at issue, but whose parentage has not been legally established. These cases are the underpinning of the majority opinion in this case, and thus it is necessary to analyze them.

In *In re S.M.*, the Court held that, where the biological father had DNA testing performed and filed a petition to establish his parentage *after* a petition to terminate his parental rights had been filed, the trial court was obliged to adjudicate the question of his parentage before considering termination.[2] *In re S.M.*, 149 S.W.3d at 637-38, 641 (citing *Jones*, 92 S.W.3d at 839). Because the trial court had not adjudicated the respondent's parentage petition, the *S.M.* Court held that the grounds for termination under T.C.A. section 36-1-113(g)(9)(A) were not applicable to him. *Id.* at 641; *see In re H.A.L.*, 2005 WL 954866, at \*1, 8-9 (holding section 36-1-113(g)(9) not applicable where respondent claimed, without documentation, that he had legitimated the child, and DCS did not prove otherwise).

This reasoning was taken a step further in *In re S.T.T.*, No. M2007-01609-COA-R3-PT, 2008 WL 162538 (Tenn. Ct. App. Jan. 17, 2008). In *S.T.T.*, the mother falsely held out to the world that the man with whom she was living was the child's biological father. *Id.* at \*1. After the Department of Children's Services ("DCS") learned that the man not the biological father, the respondent was identified and confirmed by DNA testing to be the child's biological father. *Id.*

---

[1] In contrast to the grounds applicable to legal parents, these provisions refer to "person[s]," not to "parent[s]." *Compare* T.C.A. § 36-1-113(g)(1)-(8) (2005) (referring to parental rights of "parent or guardian"), *with* T.C.A. § 36-1-113(g)(9)(A) (2005) (referring to parental rights of "person[s]").

[2] The *S.M.* Court relied on the fact that "Tenn. Code Ann. § 36-1-117(b)(2) reflects a clear preference for determining questions of parentage before considering a petition to terminate parental rights." *In re S.M.*, 149 S.W.3d at 641 (citing *Jones*, 92 S.W.3d at 839).

DCS and the respondent entered into an agreed permanency plan that identified the respondent as the "legal father" and said nothing about requiring the respondent to legally establish his parentage. *Id.* at \*8. DCS later filed a petition to terminate the respondent's parental rights, and the stated grounds included the respondent's failure to establish his parentage under T.C.A. section 36-1-113(g)(9)(A)(vi). *Id.* at \*2, 8. After the respondent's parental rights were terminated, he appealed.

The appellate court in *S.T.T.* observed that DCS had made the arrangements for the respondent to take the DNA test. *Id.* at \*8. It noted that DCS did not make the legal establishment of the respondent's parentage a stated goal of the permanency plan, and in fact misled the respondent into believing that such an action was not necessary by identifying him as the "legal father" in the plan.[3] *Id.* Based on these facts, as in *In re S.M.*, the Court found that section 36-1-113(g)(9)(A) was *not applicable* to the respondent. *Id.* at \*8-9.

The *S.T.T.* decision was relied upon in *State v. Williams*, No. W2008-02001-COA-R3-PT, 2009 WL 2226116 (Tenn. Ct. App. July 28, 2009). In *Williams*, the respondent submitted to DNA testing that showed him to be the child's biological parent. *Id.* at \*1. Although incarcerated at all times pertinent to the proceedings, he filed two letters with the juvenile court, the first expressing his "consent to being the biological father" of the child, and the second expressing his desire to prove his paternity.[4] *Id.* DCS filed a petition to terminate the respondent's parental rights. The trial court did so, relying on grounds under T.C.A. section 36-1-113(g)(9)(A)(iv) (failure to manifest ability and willingness to assume custody) and (vi) (failure to establish parentage). *Id.* at \*5. The respondent appealed.

Although the respondent in *Williams* was the biological father, his parentage had not been legally established, and he had not filed a petition to do so. In contrast to *In re S.M.* and *In re S.T.T.*, the *Williams* court did not hold that T.C.A. section 36-1-113(g)(9)(A) was not applicable to the respondent. Instead, it applied section 36-1-113(g)(9)(A) to the respondent but found that DCS had not proven the grounds under subsection (iv) and (vi). *Id.* at \*7-8. Under subsection (iv), the Court held that, under the circumstances of the case, DCS had not shown that the respondent did not manifest "willingness" to assume legal and physical custody. *Id.* at \*7.

As to subsection (vi), failure to establish parentage, the *Williams* court noted that the respondent had written letters to the juvenile court in an effort to establish his parentage, and that DCS did not assist the respondent in his efforts to do so. *Id.* at \*7-8. Discussing *In re S.T.T.*, the *Williams* court asserted that the *S.T.T.* court "found that DCS has some responsibility to the

---

[3]In the case at bar, Father's permanency plan for the children included a requirement that he legitimate the children. The majority affirms the trial court's finding that this was a reasonable requirement.

[4]In the case at bar, the record does not indicate that Father was incarcerated or otherwise prevented from legitimating his biological children.

biological father in establishing paternity pursuant to" section 36-1-113(g)(9)(A)(vi).[5]  *Id.* at *8. Relying on *S.T.T.*, the *Williams* court found that "not enough was done on DCS's part to aid [the respondent] in this endeavor [legally establishing his parentage]."  *Id.*  On this basis, the *Williams* court held that the trial court erred in finding that the respondent failed to establish his parentage under subsection (vi).[6]  *Id.*

Thus, instead of finding that section 36-1-113(g)(9)(A) was inapplicable to the father, the *Williams* court applied the provision but found that grounds under subsection (vi) were not proven because DCS had "some responsibility" to aid the father in establishing his parentage and failed to do so.  *Id.*  This shift in reasoning is subtle but significant.  Despite the *Williams* court's characterization of the holding in *In re S.T.T.*, prior to *Williams*, no previous Tennessee court had held that DCS had an affirmative responsibility to make efforts, reasonable or otherwise, to assist a person who was not a "legal parent" of the child at issue as to grounds under section 36-1-113(g)(9)(A).[7]

The reasoning employed in *Williams* is taken to its logical extreme by the majority in the case at bar.  In this case, the majority acknowledges that Father is not a "legal parent" and finds that T.C.A. section 36-1-113(g)(9)(A) is applicable to him.  Evaluating several of the grounds listed under this provision, the majority finds that Father "failed to file a petition to establish paternity" of any of the children (subsection (vi)), that he "failed to manifest an ability and willingness to assume physical and legal custody" of the children (subsection (iv)), and that placing custody of the children with Father "would pose a risk of substantial harm to the [children's] physical or psychological welfare" (subsection v)).

Nevertheless, the majority then goes on to reverse the trial court's finding of grounds for termination under section 36-1-113(g)(9)(A).  Implicitly acknowledging that the requirement of "reasonable efforts" under section 37-1-166(g)(1) applies only to the parental rights of legal parents, the majority carefully eschews stating that DCS was required to use "reasonable efforts" in assisting

---

[5]The *Williams* court was summarizing the holding in *S.T.T.*; the court in *S.T.T.* did not use the phrase "some responsibility."

[6]The *S.T.T.* court did not find that DCS had any responsibility to assist the biological father in legally establishing his parentage.  Rather, it noted that DCS *did* assist the father in arranging for DNA testing, and then entered into a permanency plan with the stated goal of uniting father and child.  *In re S.T.T.*, 2008 WL 162538, at *8.  It characterized "recognition" of the father's parentage as "[a]n essential, though unstated, component of the goal" of unification.  *Id.*  The *S.T.T.* court cited DCS's failure to include legally establishing the father's parentage as a stated goal in the permanency plan, and its reference to him as the "legal father" in the plan, as leading him to believe that further steps to legally establish his parentage were not necessary.  *Id.*  Although the undersigned filed a dissent in the *Williams* decision, there was no dissent from the *Williams* court's decision under subsection (vi), so a *mea culpa* is in order.

[7]The *Williams* court did not hold that DCS had an obligation to make "reasonable efforts" to assist, under T.C.A. section 37-1-166(g)(1).

Father as to the grounds under section 36-1-113(g)(9)(A).[8] It goes on, however, to find that DCS failed to show that it exerted some other undefined level of effort to assist Father under this statute. Citing **Williams** and **S.T.T.**, the majority holds that the trial court's finding of grounds under subsection (vi) cannot be upheld because "DCS has not shown that it aided Father in establishing paternity." It holds that termination under subsection (iv) cannot be upheld because "DCS' assistance regarding employment and housing . . . failed to meet the less-stringent requirements for the termination of non-legal parents' rights." The majority does not further discuss grounds under subsection (v), but concludes that the trial court erred in finding any grounds for terminating Father's parental rights. Presumably, in doing so, the majority implicitly holds that DCS failed to adequately assist Father in creating circumstances under which placing custody of the children with him would not "pose a risk of substantial harm to [their] physical or psychological welfare." On this basis, the majority reverses the termination of Father's parental rights.

The majority points to no statutory basis for its finding of a "less-stringent" level of effort required of DCS for "persons" who have no legally recognized familial relationship with the child. Its holding imposes new requirements on DCS that are vague and undefined. The majority finds that DCS "failed to aid Father" and had "some responsibility" to assist Father as to the grounds under section 36-1-113(g)(9)(A). While conceding that DCS is not required to make "reasonable efforts," which is statutorily defined, it claims that DCS is required to render assistance that meets "the less-stringent requirements for the termination of non-legal parents' rights." What does this mean? Does it mean "not-reasonable" efforts? The majority opinion provides no guidance as to what DCS was expected to do under this "less-stringent" standard; we know only that whatever DCS did in this case was not enough. While the majority claims it is not requiring "reasonable efforts" by DCS under section 36-1-113(g)(9)(A), the effect of its holding is to do just that.

The practical ramifications of this holding are potentially staggering for DCS, a department already faced with tremendous burdens and scarce resources. The majority's holding applies to *all grounds* under section 36-1-113(g)(9)(A), not just to the legal establishment of paternity. Moreover, it bears emphasizing that the majority even reverses the termination of Father's parental rights as to J.A.T. and B.A.T., as to whom DNA shows that he is *not* the biological father. Thus, the majority's holding applies as to any person with some claim to the child, even one with no biological tie. In a future case, if the biological mother names five men as possible biological fathers, does DCS have to put together a parenting plan for each? If not, how will the court, or DCS workers, know what responsibilities are expected of each "person" and what responsibilities are assumed by DCS? The areas in which DCS is presumably expected to render "some" assistance to such "persons" include paying child support, getting housing, taking parenting classes, getting substance abuse treatment, getting mental and emotional treatment, getting employment, and all of the myriad other issues that

---

[8]It is noteworthy that the language used in the grounds listed under section 36-1-113(g)(9)(A) seems to emphasize the "person's" responsibility. **See** T.C.A. § 36-1-113(g)(9)(A)(i)-(iv), (vi) (2005) (stating that "the person has failed" to pay birth expenses, pay child support, seek visitation, manifest ability and willingness to assume custody, and file a petition to establish paternity); **see also In re H.A.L.**, 2005 WL 954866, at *9 (noting that these grounds do not include a willfulness requirement).

come up in termination cases. To require this of DCS with respect to all persons with some claim to a child, even a person who is not a biological parent, is simply untenable.

The legislature has enacted a comprehensive and detailed statutory framework for parental termination cases. We are not at liberty to amend these statutes by judicial decision. I respectfully disagree with the majority's holding. I would affirm the termination of Father's parental rights under all grounds alleged pursuant to T.C.A. section 36-1-113(g)(9)(A), and this holding would pretermit issues raised on appeal as to the other grounds.

_____
HOLLY M. KIRBY, JUDGE