IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 7, 2011 Session

## WILSON SPORTING GOODS CO. v. U.S. GOLF & TENNIS CENTERS, INC., ET AL.

**Appeal from the Circuit Court for Cumberland County**
**No. CV004943     Amy Hollars, Judge**

**No. E2010-02651-COA-R3-CV-FILED-FEBRUARY 24, 2012**

Wilson Sporting Goods Company brought suit in the Cumberland County General Sessions Court on an open account against U.S. Golf & Tennis Centers, Inc. ("the Company") and its owners, Arthur H. Bell and Louise Bell[1] (collectively "the Guarantors"). The account resulted from a large shipment of golf balls. After delivery, the Company questioned the price charged and refused and failed to make any payments. In response to Wilson's suit, the defendants filed a counterclaim in which they denied owing the amount sought and moved the court to modify or rescind the contract with Wilson. Following a bench trial, the general sessions court entered judgment in favor of Wilson. On appeal to the trial court, both sides sought summary judgment; both motions were denied. After a bench trial, the court entered judgment in favor of Wilson for $33,099.28. The defendants appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Henry D. Fincher, Cookeville, Tennessee, for the appellants, U.S. Golf & Tennis Centers, Inc., Arthur H. Bell, and Louise Bell.

Frederick L. Conrad, Jr., Knoxville, Tennessee, for the appellee, Wilson Sporting Goods Co.

---

[1]The Bells are married.

# OPINION

## I.

### A.

At the outset, we observe that there is no trial transcript in the record before us. Each of the parties filed a statement of the evidence. The trial court adopted Wilson's statement as the "thorough and accurate Statement of the Evidence in this case." We briefly summarize the underlying facts as contained in the record, which record includes filings in general sessions court, the court-approved statement of the evidence, and the trial court's findings.

### B.

The Guarantors established the Company in 1991. The Company is apparently the owner of two retail sporting goods stores specializing in the sale of golf and tennis equipment: one in Tennessee and the one in Ohio.[2] The Company is a long-time customer of Wilson; it had an open account with Wilson since 1995. The Company's obligations to Wilson were guaranteed by the Guarantors. Sometime in January 2007, Mr. Bell, on behalf of the Company, agreed to purchase from Wilson 4,000 units of second-hand golf balls at a unit price of $5.00 – a unit being two dozen golf balls. Thus, the Company purchased 96,000 golf balls for a total price of $20,000. The order was shipped on January 26, 2007, and billed to the Company and Mr. Bell. The invoices reflect that the order was shipped to "U.S. Golf & Tennis Centers, Inc.," with half of the shipment being received at the Ohio store and the other half being delivered to the Tennessee store. It is undisputed that the shipment conformed in quantity and quality to the specifications of the parties' contract.

When Wilson filed suit in September 2007, the $20,000 balance on the contract was past due and owing. The record reflects a series of fax communications between Mr. Bell and Wilson in the time frame of March 2007 – May 2007, in which Mr. Bell repeatedly sought written confirmation that the Company had received the "lowest price" for the golf balls. In its faxes, Wilson confirmed that the Company received the lowest price "that

---

[2]We say apparently because a filing in support of the defendants' post-judgment motions indicates that the Ohio outlet is owned by an entity whose name, *i.e.*, "U. S. Golf & Sport Centers, Inc," is similar to, but somewhat different from, the Company's name. As noted in this opinion, the defendants' assertion that half of the shipment of golf balls went to the Ohio store was first raised in its post-judgment motions. Because of the lateness of the raising of this issue, we will decline, later in this opinion, to consider the merits of this defense; however, we do not understand how such a defense can help the defendants, because it is clear in the record that the entire shipment of golf balls – wherever they ended up – were sold by Wilson to the defendant U. S. Golf & Tennis Centers, Inc.

Wilson offered to any one in the market." The communications ended with Wilson seeking "prompt payment," and with Mr. Bell, apparently unsatisfied with Wilson's responses, seeking authorization to return the shipment to Wilson.

In answer to Wilson's suit, the defendants alleged breach of contract in that Wilson had "misrepresented the price of the goods at issue." The defendants concluded by asserting that Wilson was "owed nothing at this point." In their counterclaim, the defendants allege that the Company "agreed to purchase . . . 96,000 golf balls if [Wilson] would give them the lowest price offered nationwide for the line of product involved. . . .," but "[b]efore delivery [the defendants] heard that in fact [Wilson] had sold the product for $2.00 per dozen." The defendants asserted that, when they asked Wilson to either affirm in writing that they had received the lowest price for the golf balls or to reduce the price to $16,000, *i.e.* 4,000 units times *$4.00* per unit, Wilson "did neither and brought this action instead." Similarly, in support of their October 2008 motion for summary judgment, the defendants asserted that

> as a condition precedent to the purchase of these golf balls, . . . Wilson . . . agreed that this price would be the lowest price charged to anyone in the marketplace at that time. Thereafter, [Wilson] sold golf balls at a lesser price [*i.e.*, $4.00 per unit]. Accordingly, there was never a meeting of the minds as to the amount that would be charged.

A bench trial was held in May 2010. The statement of evidence provides that at trial, "both [Wilson's] witness and Defendant Arthur H. Bell testified that the price agreed upon for the golf balls was $20,000.00, which represented $5.00 per unit times 4,000 units," with "[a] unit being two dozen golf balls."

The trial court expressly found that the defendants' proffered statement of the evidence was "inaccurate" in several respects, all as pointed out in Wilson's court-approved statement of the evidence:

> Mr. Bell did not testify where he was when he was contacted about purchasing the golf balls. It was never brought up as it was not an issue.

> Mr. Bell did not testify at the trial that he instructed [Wilson] to deliver half the golf balls to Ohio, in fact he testified that they

were all still at his local Tennessee warehouse (which appears to have been incorrect).[3]

Mr. Bell did not testify at the trial that a customer in Michigan bought the balls for $4.00 a sleeve. He did not have or present any evidence of any sales at a lower price. Even if he did have evidence of a sale to another customer at $4.00 a sleeve (which he did not), it would not be a lower price as the Court can take judicial notice that a sleeve of golf balls is 3 or occasionally 4 balls. The Defendants bought their balls at $5.00 a unit and the unit was two dozen golf balls.

There was no testimony about the balls being shipped to Ohio at the trial because it was not an issue raised by the Defendants.

The representative for Wilson at the trial testified about the information regarding arrangements on the transaction. She testified as to the quality, quantity, and price information in the company's file – all terms the Defendants acknowledged.

(Paragraph numbering in original omitted.)

In its June 21, 2010, judgment, the trial court made the following pertinent findings:

[I]t is the finding of this Court that there was a "meeting of the minds" and that there exists a binding contract between [Wilson] and the Defendants for the agreed price of . . . $20,000.00 . . . for the goods supplied by [Wilson] to the Defendants. The Court further finds that there is no contention as to the quality and quantity and type of the goods provided to the Defendants by [Wilson], that the lowest price for the specific goods ordered and received was confirmed, and that it is hard to see any basis for dispute.

Following entry of judgment, the defendants filed a motion for new trial, motion to alter or amend, and a motion to stay judgment. The defendants contended, in part, that:

_____

[3]As we understand the clause, "which appears to have been incorrect," the statement of the evidence is reciting that, despite Mr. Bell's testimony, the record shows that all of the shipment was received, half at the Tennessee store and half at the Ohio store.

[T]rial counsel was hampered in presenting evidence at trial due to a fire at his office and the necessary distractions associated therewith;

[I]nformation that would prove that [Wilson] had breached its contract with the Defendants was not provided by [Wilson] in discovery despite request therefore, and that a new trial should be granted to permit Defendants an adequate time to compel [Wilson] to provide the information. . . ;

Defendants were not able to testify as to certain actions of relevance to the contract and the agreement between the parties that [Wilson] breached. . . .

Wilson responded that all discovery requests submitted by the defendants were answered, that Mr. Bell did testify at trial, and that the defendants in their post-judgment motions raised, for the first time, a claim that part of the merchandise ordered was not delivered to them but, rather, to another, separate entity, that being the Ohio store. After a hearing and review of the record, the trial court found that "[the defendants] failed to raise the defenses sought to be presented in their motions . . . in a timely manner." It denied all of the requested relief. The defendants appeal.

II.

The defendants present the following issues for our review:

1. Does the Uniform Commercial Code permit Mr. Bell to cancel the contract since he rejected the shipment in a timely manner, but Wilson refused to accept its return?

2. Should the trial court have granted a new trial based on newly discovered evidence that showed that half the shipment went to a non-defendant corporation in another state?

3. Should the trial court have granted a new trial because Wilson refused to answer requests for production?

III.

In this non-jury case, our review is de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is against those findings. *Id*.; Tenn. R. App. P. 13(d). In weighing the preponderance of the evidence, great weight is accorded to the trial court's determinations of witness credibility, which will not be disturbed absent clear and convincing evidence to the contrary. *See **Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002). Questions of law are reviewed de novo with no presumption of correctness. ***Langschmidt v. Langschmidt***, 81 S.W.3d 741, 744-45 (Tenn. 2002).

IV.

The defendants contend that they were legally entitled to cancel the subject contract and that, therefore, the trial court erred in upholding the contract and awarding Wilson a judgment for $33,099.28.[4]

Generally speaking, transactions for the sale of goods are governed by provisions of the Uniform Commercial Code, which, in Tennessee, is found at Tenn. Code Ann. Sec. 47-2-101, et seq. (2001). The defendants point, in particular, to Tenn. Code Ann. § 47-2-601, which provides, in relevant part, that "if the goods or the tender of delivery fail in any respect to conform to the contract," the buyer may, among other options, "reject the whole. . . ." The defendants assert that when Mr. Bell "learned [that] Wilson charged him more than he had agreed to pay, [he] asked repeatedly to return the disputed product," but Wilson refused. From the defendants' point of view, the goods in this case failed to conform to the contract because, according to the defendants, Wilson charged the defendants a higher price for the goods than that agreed upon. The defendants assert that Mr. Bell, acting upon behalf of the Company, was thus entitled to and did in fact reject the shipment. The defendants argue that once they rejected the goods, they were entitled to cancel the contract pursuant to Tenn. Code Ann. § 47-2-711. That section provides as follows:

> Where the seller fails to make delivery or repudiates or the buyer
> rightfully rejects or justifiably revokes acceptance then with
> respect to any goods involved, and with respect to the whole if
> the breach goes to the whole contract . . . , the buyer may cancel
> . . . .

---

[4]The judgment includes the base contract price of $20,000, pre-judgment interest, attorney's fees, and certain expenses incurred by Wilson in its collection efforts.

The defendants essentially conclude that the parties' contract became unenforceable after Mr. Bell cancelled the contract by "rejecting the delivery once he learned of the price dispute. . . ." Wilson responds that the goods in no way failed to conform to the contract, and that there was no rejection or justifiable revocation of acceptance of the goods by the Company. Accordingly, Wilson concludes that the Code sections relied upon by the defendants do not apply to permit the defendants to cancel the contract. In a word, Wilson is *correct*.

Nothing in the evidence before us shows or even suggests that the defendants ever rejected delivery of the shipment of the golf balls or that it ever had the right to do so. The defendants do not dispute that the product received by the Company conformed to the contract with respect to quantity and quality. Their sole contention at trial was that the price charged was not the lowest available price, as contemplated by the contract. The trial court, however, found that the parties had a contract for an agreed total purchase price of $20,000, and that "the lowest price for the specific goods ordered and received was confirmed." The evidence was that "both [Wilson's] witness and [d]efendant Arthur H. Bell testified that the price agreed upon for the golf balls was $20,000.00." In addition to the fact that the contract's terms regarding price are clear, there is *nothing in the record* to contradict Wilson's confirmations to Mr. Bell that the defendants did receive the lowest price offered to anyone for the goods received. In support of their motion for summary judgment, the defendants concede that they had not advised Wilson of "any deficiency of the supplies or services" provided under the parties' contract and had "no valid defense as to [Wilson's] claim for judgment. . . ."[5]

In summary, the cited UCC provisions regarding rejection, revocation and cancellation do not apply in this case where the trial court properly found that the seller, *i.e.*, Wilson, fully performed, but the buyer, the Company, failed to make any payments. As discussed, the agreed contract terms, including purchase price, were clear. The trial court did not err in upholding the contract and holding the defendants liable for the goods received.

V.

The defendants next contend that the trial court erroneously held that the Guarantors were liable for the entire $20,000 shipment even though "half the shipment went to the non-defendant Ohio corporation" and the Guarantors "did not sign any personal guaranty for the Ohio corporation." The defendants conclude that "[a]s it now stands, the trial court's ruling

---

[5]The latter part of this assertion is curious because it is clear that the defendants do attempt to assert a defense to Wilson's claim.

imposes liability on the Tennessee corporation for goods it never received, and upon Mr. and Mrs. Bell for a debt owed by a corporation that it did not guarantee."

In rendering judgment in favor of Wilson, the trial court found that the specified goods were supplied by Wilson to the Company. The "thorough and accurate" statement of evidence expressly states that "there was no testimony [by Mr. Bell] about the balls being shipped to Ohio at the trial because it was not an issue raised by the [d]efendants." In fact, as previously noted, Mr. Bell "testified that [the golf balls] were all still at his local Tennessee warehouse," which, as noted in the statement of evidence, appears to be incorrect. Again, the evidence reflects that the entire order was shipped and invoiced to "U.S. Golf & Tennis Centers, Inc.," with half the shipment received at the Ohio store and the other half at the Tennessee store. Further, in support of their motion for summary judgment, the defendants admitted that they had never "advised [Wilson] of any deficiency of the supplies or services" provided under said contract," and that "the merchandise delivered conformed to the specifications in quantity and quality of the merchandise ordered." At trial, the defendants raised only an argument that there was no agreement as to the contract price; delivery of the goods and liability for purchases on the open account were apparently not in dispute.

In their motion for new trial, the defendants contend, for the first time, that they were "hampered in discovering this corporate entity issue due to the unanswered and uncompelled discovery responses." The defendants' argument is difficult to discern. As noted, evidence of delivery of the goods is in the record and the Guarantors do not dispute their status as guarantors for purchases on the account of U.S. Golf & Tennis Centers, Inc. To the extent that they seek a new trial based on "newly discovered evidence," however, they cannot prevail. "[D]eeply ingrained in the holdings of our courts . . . is that to justify a new trial for newly discovered evidence it must be shown that the new evidence was not known to the moving party prior to or during trial and that it could not have been known to him through exercise of reasonable diligence." *Seay v. Knoxville*, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983). The defendants do not specify what they expected to gain through further discovery, but, in our view, everything they needed to assert this "corporate entity issue" was existing and known or should have been know to them before trial. In denying post-judgment relief, the trial court found that the defendants' claims of inadequate opportunity to present their defenses came too late. We agree.

In short, the defendants cite no evidence or authority for their contention that the trial court erred in holding them liable for the entire purchase price for the goods indisputably received under the parties' contract, and we find none. It appears to us that the defendants simply changed course after trial and seek a new trial and the opportunity to present "new"

evidence or theories in an effort to avoid payment of all or part of the debt they certainly owe. This issue is without merit.

VI.

Lastly, the defendants assert that the trial court erred in denying their motion for a new trial and, thus, the opportunity to "follow up on . . . unanswered discovery requests." More specifically, the defendants assert that Wilson failed to respond to their request for documents "regarding the contract price." The defendants submit that their admitted failure to file a motion to compel to obtain the "hidden documents" should be excused in light of various distractions their trial counsel faced, including a fire at counsel's office and his withdrawal after being appointed to a new position as county attorney.[6] In his affidavit in support of the defendants' motion for new trial, Mr. Bell concludes that had Wilson's responses been compelled, "they would have proven the other price and resulted in establishing the other central part of this dispute, namely, that Wilson overcharged me for these 'seconds.' " He added that the "owner of Maple Hills Golf Club in Michigan – also a Pete Delano account[7] – informed me that Wilson sold him seconds for net $4 a package of seconds of like quality" and that the defendants "made requests for production of documents related to these sales, but Wilson . . . refused to answer . . . despite being required to do so by law. . . ."

No discovery-related filings in this case are before us. Our review of the record, however, gives no indication that any discovery abuse was brought to the trial court's attention at trial. The facts further show that, despite the defendants' assertion that the pricing dispute arose "before delivery" of the golf balls, there was no testimony at trial about any sales of the golf balls at a lower price. More significantly to the defendants' position, however, is the fact that even had they been able to demonstrate that Wilson once sold golf balls to another customer at a lower price than that paid by the defendants, such evidence would avail them nothing. The trial court found that Wilson and Mr. Bell, on behalf of the Company, formed a contract in which all of the essential terms were agreed to, including a set price, and the evidence does not preponderate against this finding.

---

[6]Randal R. Boston filed a notice of appearance as trial counsel for the defendants in August 2009, some 10 months before trial. He had first discussed the possibility of representing the defendants in June 2009. Later that month, counsel experienced a fire at his office. Mr. Boston was permitted to withdraw post-trial and present counsel, Henry D. Fincher, was substituted as the defendants' counsel of record.

[7]Mr. Delano is Wilson's sales representative for the Company's account.

"A new trial will be granted on account of newly discovered evidence only when it is evident that an injustice has been done and a new trial will change the result." ***McCollum v. Huffstutter***, No. M2002-00051-COA-R3-CV, 2002 WL 3124707 at *5 (Tenn. Ct. App. Oct. 8, 2002). In ruling on a motion for new trial on the grounds of newly discovered evidence, the trial court is vested with wide discretion and its denial of such a motion will not be disturbed on appeal absent an abuse of its discretion. ***Id***. (citing ***Evans v. Evans***, 558 S.W.2d 851, 853 (Tenn. Ct. App.1977)). The record before us does not demonstrate an abuse of discretion by the trial court.

Based on our review of the record, we can only agree with the trial court's conclusion that "it is hard to see any basis for dispute." The evidence does not preponderate against the trial court's finding that a binding contract existed between these parties "for the agreed price of . . . $20,000.00 . . . for the goods supplied by [Wilson] to the [d]efendants." The trial court did not err in denying the defendants' motion for new trial.

VII.

The judgment of the trial court is affirmed. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed below. Costs on appeal are taxed to the appellants, U.S. Golf & Tennis Centers, Inc., Arthur H. Bell and Louise Bell.

_____
CHARLES D. SUSANO, JR., JUDGE