IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 25, 2010

## IN THE MATTER OF:  MADISON K.

**Direct Appeal from the Juvenile Court for Madison County**
**No. 47-42, 980      Christy R. Little, Judge**

---

**No. W2010-00183-COA-R3-PT - Filed September 27, 2010**

---

This is a termination of parental rights case.  Father/Appellant appeals the trial court's termination of his parental rights to the minor child on grounds of: (1) abandonment by willful failure to support and willful failure to visit, as defined at Tenn. Code Ann. § 36-1-102(1)(A)(i); and (2) persistence of conditions as set out at Tenn. Code Ann. §36-1-113(g)(3).  Finding that there is clear and convincing evidence in the record to support these grounds, as well as clear and convincing evidence that termination of Appellant's parental rights is in the best interests of this child, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Melissa A. Downing, Jackson, Tennessee, for the appellant, Chris K.

Lanis L. Karnes, Jackson, Tennessee, Guardian Ad Litem.

**OPINION**

On March 25, 2008, the Tennessee Department of Children's Services ("DCS") filed a petition, alleging that the minor child at issue in this case, Madison K. (d.o.b. March 25, 2007) was dependent and neglected.  Specifically, DCS averred that the child's father, Chris K. ("Appellant"), was unable to provide a suitable home for the child due to his unstable living situation and that Mr. K. had an active warrant against him.  At the dependency and neglect hearing, an attorney was appointed for Mr. K.  Lanis L. Karnes ("Appellee") was appointed guardian *ad litem* for the child.  At this hearing, the parties stipulated to an

adjudication of dependency and neglect, and an order was entered on June 3, 2008. This order indicated the agreement that Mr. K.'s residence was not suitable for a young child and that Mr. K. had been served with an eviction notice. The child was placed in the temporary custody of the maternal grandmother and step-grandfather. Mr. K. was awarded visitation with the child, which was required to take place at CASA.

A review hearing was held on July 1, 2008. At that hearing, temporary custody of the child was changed from the maternal grandmother and step-grandfather to foster parents Rita and Wilmer T. Mr. K. was not present at this hearing, although the record indicates that notice was sent to his last known address. The court further ordered that Mr. K.'s visitation would be suspended until Mr. K. showed some compliance with the permanency plan. The court also indicated that, before visitation could resume, Mr. K. would have to submit to, and pass, a drug test. There is no indication in the record that Mr. K. complied with these mandates.

On March 23, 2009, Ms. Karnes, the guardian *ad litem,* filed a petition for termination of Mr. K.'s parental rights.[1] As grounds, Ms. Karnes asserted: (1) abandonment pursuant to Tenn. Code Ann.§ 36-1-102(1)(A)(i), (ii); (2) failure to substantially comply with the requirements of the permanency plan pursuant to Tenn. Code Ann. § 36-1-113(g)(2); and (3) persistence of the conditions that led to the removal of the child, pursuant to Tenn. Code. Ann. § 36-1-113(g)(3).[2]

An initial hearing was held on June 29, 2009. At that time, a new attorney was substituted as counsel for Mr. K. On July 13, 2009, Mr. K.'s attorney filed an answer to the petition to terminate parental rights. The petition to terminate parental rights was tried to the court on September 6, 2009. An order terminating Mr. K.'s parental rights was entered on December 9, 2009. The order provides, in pertinent part:

> Upon proper notice, parties, testimony given and the entire record as a whole, upon the hearing of this cause, the Court finds on the basis of clear and convincing evidence:

> \*                          \*                          \*

---

[1] Tenn. Code Ann. §36-1-113(b) specifically provides that the guardian ad litem has standing to file a petition to terminate parental rights.

[2] Although Ms. Karnes alleged numerous grounds for termination of Mr. K's parental rights, we note that clear and convincing evidence of only one of the statutory grounds is sufficient to terminate parental rights. Tenn. Code Ann. § 36-1-113(c).

12. The following grounds have been proven by clear and convincing evidence:

a. As set forth in T.C.A. § 36-1-11[3](g)(1), abandonment [] of [the minor child] has occurred in that for a period of four (4) consecutive months immediately preceding the filing of this termination proceeding, Mr. K. has willfully failed to visit and willfully failed to support or make reasonable payments toward the support of [the minor child]. In the four month period prior to the filing of the termination petition, Mr. K. did not visit the child, did not call the child, did not send any letters, cards, or gifts to the child, and did not provide any financial support for the child. The various court orders mention child support, but Mr. K. has paid no support although he stated he has $5,000.00 saved.

b. As set forth in T.C.A. § 36-1-113(g)(3), the child has been removed from the home of the Respondent by Order of Court for a period of greater than six (6) months and the conditions which led to the child's removal, or other conditions which in all reasonable probability would cause [the minor child] to be subjected to further abuse or neglect, and prevent her safe return to the care of the Respondent[] still exist; there is little likelihood that these conditions will be remedied at an early date so that [the minor child] may be safely returned to the Respondent[] in the near future and the continuation of the parent and child relationship greatly diminishes [the minor child's] chances of successful integration into a safe, stable and permanent home. Mr. K. has shown no pattern of stability although he now has a job. Mr. K. does not have his own home. The paternal grandfather said that the child was "welcome to visit" but did not say welcome to live at his home where the father periodically lives. The maternal grandmother testified that she called the paternal grandfather regarding assistance with the child, and he stated that the minor child was not welcome there. No early date has been provided as to when Mr. K. will have a suitable home, and the child cannot wait forever for permanency.

\*                    \*                    \*

14. Termination of all Respondent Father's parental rights is in the best interests of [the minor child]:

a. The Respondent Father has failed to make such an adjustment of circumstances, conduct or conditions as to make it in the child's best interests to return to [his] home in the future.

b. The child is medically fragile, being diagnosed with food allergies and fetal alcohol syndrome....

*                              *                              *

e. The child has bonded with the [foster family].

f. [The minor child] has resided consistently with the [foster family] since she was 1 year of age, and for a period greater than six (6) months.

g. [The minor child] knows [Mr. T. and Mrs. T.] to be her mother and father.

h. [Mr. and Mrs. T.] agree to allow [the minor child] to see her siblings.[3]

i. [Mr. and Mrs. T.] have marital and financial stability and health and dental insurance. [The child's] allergies are regularly monitored. Any medical bills which insurance did not cover, the [foster family] have paid. They are properly providing for [the child's] education....

j. Termination of all Respondent Father's parental rights is in the best interests of [the minor child]. Mr. K. has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible.

---

[3] The child's mother, Amy K., had three children with Mr. K. Two of the children are not involved in the instant appeal.

k. Termination of all Respondent Father's parental rights is in the best interests of [the minor child]. Mr. K. has not maintained regular visitation or other contact with the child. Mr. K., by his own admission, has not seen [the minor child] for one and a half years.

l. Termination of all Respondent Father's parental rights is in the best interests of [the minor child]. A meaningful relationship has not been established between Mr. K. and [the child].

m. Termination of all Respondent Father's parental rights is in the best interests of [the minor child]. A change of caretakers and physical environment is likely to have a negative effect on [the minor child's] emotional, psychological and medical condition.

n. Termination of all Respondent Father's parental rights is in the best interests of [the minor child]. The physical environment of Mr. K.'s home is not healthy or safe.

In addition to the foregoing findings concerning the grounds for termination and the best interests of the minor child, the trial court also made specific findings concerning the credibility of the witnesses:

p. The Court finds the testimony of the witnesses credible except that of Mr. K. and the paternal grandfather.

q. The Court finds that the father and paternal grandfather discussed the case and the testimony during the lunch break and they had similar testimony and used very similar language about certain issues.

Mr. K. appeals, raising two issues for review as stated in his brief:

1. Whether the trial court's finding of statutory grounds for termination of the Appellant's parental rights is supported by clear and convincing evidence.

2. Whether termination of parental rights is in the best interests

of the child.[4]

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. **Stanley v. Illinois**, 405 U.S. 645, 651 (1972); **Nash-Putnam v. McCloud**, 921 S.W.2d 170, 174 (Tenn.1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. **Nash-Putnam**, 921 S.W.2d at 174-75 (citing **Santosky v. Kramer**, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interests in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." **In re W.B.**, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interests:

> (c) Termination of parental or guardianship rights must be based upon:
> (1) A finding by the court by clear and convincing evidence that
> the grounds for termination of parental or guardianship rights
> have been established; and
> (2) That termination of the parent's or guardian's rights is in the
> best interests of the child.

Tenn. Code Ann. § 36-1-113(c); **In re D.L.B.**, 118 S.W.3d 360, 367 (Tenn.2003); **In re Valentine**, 79 S.W.3d 539, 546 (Tenn.2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. **Santosky**, 455 U.S. at 769. Consequently, both the grounds for termination and the best interests inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); **In re Valentine**, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable ... and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." **In re M.J.B.**, 140 S.W.3d 643, 653 (Tenn. Ct. App.2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." **Id**. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a

---

[4] During the pendency of these proceedings, the child's mother, Amy K., voluntarily surrendered her parental rights to [Mr. and Mrs. T.]. The mother is not a party to this appeal.

reviewing court must modify the customary standard of review set as forth in Tenn. R. App. P. 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court, or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn.2002). When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. ***See McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn.1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***See id.***; ***see also Walton v. Young***, 950 S.W.2d 956, 959 (Tenn.1997).

## Grounds for Termination of Parental Rights

The trial court terminated Mr. K.'s parental rights pursuant to Tenn. Code Ann. § 36-1-113(g), upon a finding, by clear and convincing evidence, of the following grounds: (1) abandonment by willful failure to support and willful failure to visit as defined at Tenn. Code Ann. § 36-1-102(1)(A)(i); and (2) persistence of conditions. We will examine each of these grounds to determine whether, in fact, clear and convincing evidence exists in the record to support the trial court's findings.

## Abandonment

Tenn. Code. Ann. § 36-1-113(g) provides, in relevant part, that:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection. The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> *                        *                        *
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

The term "abandonment," as used in the termination of parental rights statutes, is defined at

Tenn. Code Ann. § 36-1-102(1)(A). This statute provides, in relevant part, as follows:

> (1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

<u>Abandonment by willful failure to visit</u>

The hearing on the petition to terminate Mr. K.'s parental rights was held on October 6, 2009. At that time Mr. K. admitted that he had not seen the child since March of 2008. The maternal grandmother testified that, during the time that the child lived with her (approximately March, 2008 until July, 2008), Mr. K. saw the child only twice–once when he accompanied the child's mother to the grandmother's house for a brief visit, and once when the grandmother invited Mr. K. to eat with them for the child's birthday. The foster mom, Rita T., testified that Mr. K. had made no contact whatsoever with her since the child came into the her custody in approximately July, 2008.

Although Mr. K. excuses his lack of contact with the child by testifying that the grandmother and Rita T. denied him access to the child, there is no evidence in the record to support this allegation. Moreover, Mr. K. testified that he was aware that he had a court-appointed attorney, whom he could contact at any time, and that he did not attempt to contact his attorney concerning any visitation problems. While the child was in the grandmother's custody, Mr. K. apparently petitioned, and was granted, visitation through CASA. However, according to Joyce Williams, the CASA case manager, in the four months preceding the filing of the petition to terminate parental rights, CASA had no contact from Mr. K. Despite Mr. K.'s protestations that he was given the "run around" by the various social agencies, the preponderance of the evidence weighs against his assertion. Rather, it appears that Mr. K. took no proactive steps to implement his visitation. Although he freely admits that he knew that he could avail himself of the services of his attorney, the courts, and the social agencies, the record indicates that he did not do so. From the totality of the circumstances, we

conclude that there is clear and convincing evidence in the record to support the trial court's finding of abandonment by willful failure to visit.

<u>Abandonment by willful failure to support</u>

From our review of the record, it is clear that one of the primary concerns with Mr. K.'s ability to care for this child is his inability to hold a job. At the time of the hearing in this case, Mr. K. testified that he had been able to maintain a position at Ceco Doors for "probably about five months." Mr. K. further testified that he was "making $9.50 to $9.75 an hour," and admitted that he was "making enough to support [himself] and [his] daughter." In fact, Mr. K. testified that he had been able to save approximately $5,000. Despite the fact that Mr. K. has allegedly been employed for five months, has been working "40 hours a week plus overtime," at a rate of $9.50 to $9.75 per hour, and has managed to save $5,000, there is no indication in the record that Mr. K. has paid any support whatsoever for this child. Although he testified that he had "offered" to purchase Christmas presents, and to support the child, the grandmother testified that, at most, Mr. K. had bought "one package of diapers." Rita T.'s testimony is similar. She states that, since the child came into her custody, Mr. K. has paid nothing toward her care and support; he has sent no gifts, and has not made contact with her concerning any needs the child might have.

Mr. K. tries to negate the fact that he has not supported his child by arguing that he was not aware of any court-ordered obligation to do so. He protests that he would have been glad to support the child if he knew how to get the money to her; yet, he has made no steps toward this end. Regardless, it is a well-settled legal maxim that the parents of a child are liable for that child's support and maintenance. This is true regardless of whether there is a court order on support. This is true regardless of whether another party states that the support is not welcome or needed. If a parent has the means to support the child, then the parent has the duty to do so. ***See, e.g., Smith v. Gore***, 728 S.W.2d 738, 750 (Tenn. 1987); ***C.J.H. v. A.K.G.***, No. M2001-01234-COA-R3-JV, 2002 WL 1827660, *3-4 (Tenn. Ct. App. Aug. 9, 2002).

It appears that Mr. K. had the means to support this child. However, despite having the ability to support, the record reveals that Mr. K. made no effort to do so. From the totality of the circumstances, we conclude that there is clear and convincing evidence in the record that, despite having the means to support this child, Mr. K. willfully abandoned her by failing to do so.

**Persistence of Conditions**

Tenn. Code Ann. § 36-1-113(g)(3) provides, in pertinent part:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection. The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

\*                          \*                          \*

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
(B) There is little likelihood  that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

The order, finding the child to be dependent and neglected, was entered on June 3, 2008.  There is no dispute in the record that this order was reached by agreement of the parties.  From our review of the record, and from the DCS records, and the testimony of DCS case worker, Marilyn McCloskey, it appears that the conditions that led to the child's removal from Mr. K.'s custody were: (1) lack of consistent employment, and (2) lack of consistent, safe, and clean housing.

There is no dispute in the record that Mr. K. has held myriad jobs in a relevantly short time period.  When asked to explain his lack of consistency in the job market, Mr. K. blames Amy K., her mother, and his bosses.  At no point does he take any responsibility for his numerous terminations.

At the time of the hearing, Mr. K. testified that he had been employed by Ceco Door Company for approximately five months.  However, from our reading of the record, it appears that this is a temporary job, procured through a temporary staffing service.  Although we applaud Mr. K.'s efforts to stay on this job, in light of his previous employment history, it would be remiss for us to conclude that a five-month period of employment indicates a

significant change. There is simply not enough in this record to conclude that Mr. K. has shown the ability not only to get a job, but also to keep that job for any significant period of time.

Concerning housing, the child's mother, Amy K., testified that she and Mr. K. had been together since 2004, had married in 2006, and had separated in 2008. At the time of the hearing, Amy K. was still married to Mr. K., although both concede that the marriage is at an impasse. Although both expressed a desire to divorce, both cite financial issues as the reason for delaying such proceedings. At any rate, Ms. K. testified that, during the time that she and Mr. K. were together, they had lived in no less than ten locations. She testified that they were forced to move each time by eviction, or by immediate threat of eviction. In fact, Ms. K. stated that, for a few months, they were actually homeless, and were forced to live in their vehicle. Mr. K. admits that the couple moved many times, although he blames Ms. K.'s lack of housekeeping skills for the tenancy problems.

In photos taken by the CASA volunteer, Joyce Williams, and made part of the record, it appears that, when the K.s were able to procure housing, they were unable to keep the residence clean and safe for a baby. In Ms. Williams' photos, the house appears in disarray, with mounds of clothing on the floor. Dirty dishes and spoiled food are seen in the kitchen. There are dirty dishes and used ashtrays scattered throughout the house. There are several cats in the photos. Ms. Williams testified that the cats had urinated on the clothing and rugs, and that the smell in the house made it untenable.

At the time of the hearing, Mr. K. was living with his father and step-mother in his step-mother's home. Although the social workers indicated that this house is clean and otherwise suitable for a child, the problem is that it is not owned or rented by Mr. K. In fact, the record indicates that Mr. K. makes no significant contribution to the household budget. In the absence of his father and step-mother's largess, there is no indication that Mr. K. would be able to provide a suitable home for this child. Moreover, although Mr. K.'s father testified that the child would be welcome in the home, there is no indication that the welcome would extend beyond an occasional visit.

Given the evidence of the previous nomadic lifestyle and, frankly, unkempt nature of those living conditions, this Court would be remiss to return the child to a situation that is still not stable–a situation where the child's father is the one being supported. During the pendency of these proceedings, Mr. K. has had sufficient time to prove that he can provide adequate housing for this child, but he has not taken steps to do so. Concerning reasonable efforts on the part of social agencies, Mr. K.'s transient lifestyle has made it difficult, if not impossible, for the agencies to locate Mr. K. According to the testimony, Mr. K. has been provided an attorney, and has been asked to participate with the agencies in the reunification

of the family. DCS and CASA have made efforts to help Mr. K. achieve his purported goal of having his child back, and yet it does not appear that he has availed himself of these services. In fact, it appears that he has thwarted and evaded any efforts offered by these agencies. The reunification of a parent and child after court-ordered removal is a two-way street. Social agencies can only do so much within their somewhat limited means and in light of the many cases they handle. Consequently, cooperation on the part of the parent is paramount to the success of the endeavor. ***See, e.g., State of Tennessee Dept. of Children's Serv. v. Stinson***, No. W2006-00749-COA-R3-PT, 2006 WL 3054604, *15 (Tenn. Ct. App., Oct. 30, 2006), perm. app. denied (Tenn. Feb. 5, 2007). The record here reveals a complete lack of cooperation on the part of Mr. K., who, rather than taking the necessary steps to be reunited with the child, chooses instead to assert that the agencies and the court are in "kahoots [sic]" and are conspiring to "steal his child." Neither of these allegations finds support in the record.

Based upon the foregoing discussion, there is clear and convincing evidence in the record that Mr. K. has not adequately remedied these problems so as to properly provide for this child. There is no dispute that the child has been removed from Mr. K.'s home since early 2008. Rita T. testified that the child has adapted well to her home, and that she and her husband considered the child to be their own. Rita and Wilmer T. stand ready to adopt the child, pending the outcome of this appeal. In contrast, Mr. K. admits that he had not seen the child since March, 2008. In the face of Mr. K.'s inability to prove that he can provide for this child, this Court cannot delay the child's chances of integration into the T.'s safe, loving, and stable home by giving Mr. K. more time to show that he is capable of providing even the basic needs of the child.

## Best Interests

Tenn. Code Ann. § 36-1-113(i) provides a list of factors the trial court is to consider when determining if termination is in the child's best interests. The statutory factors are as follows:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interests to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular

visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). We note that this list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interests. *State v. T.S.W.*, No. M2001-01735-COA-R3-JV, 2002 WL 970434 (Tenn. Ct. App. May 10, 2002). The best interests of a child must be determined from the child's perspective and not the parents. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App.2004).

We have reviewed the record and we conclude that there is clear and convincing evidence in record to support the trial court's finding that termination of Mr. K.'s parental rights is in the best interests of this child. Mr. K. has failed to make the necessary adjustments of circumstance, conduct, or conditions so as to make it in the child's best interests to be in his home. In fact, as noted above, Mr. K. currently lives in his father's home where he provides no significant contribution toward the household expenses. Despite the efforts made by the social agencies, Mr. K. has failed to avail himself of any opportunity to visit or support his child. From the totality of the circumstances, a lasting adjustment on the part of Mr. K. does not reasonably appear possible.

In addition, Mr. K. has no visitation history with this child, and there does not appear to be any meaningful relationship between Mr. K. and the child. Rather, the evidence clearly demonstrates that the child has bonded with the T. family, and they with her. The Court also notes that the child suffers from numerous allergies, and has a suspected diagnosis of fetal alcohol syndrome. These issues necessitate regular doctor's visits and special services to combat any developmental delays. Mrs. T. testified that the child is currently receiving these services while under the T.'s care. We have been provided with no reasons to disrupt the stability that the child has found in the T.'s home, which could be devastating to the child's progress and her long-term emotional, psychological, and medical well-being.

From the totality of the circumstances, we conclude that there is clear and convincing evidence to support the trial court's termination of Mr. K.'s parental rights on grounds of abandonment and persistence of conditions. Moreover, there is clear and convincing evidence to support the trial court's finding that termination of Mr. K.'s parental rights is in the best interests of this child. Consequently, we affirm. Costs of this appeal are assessed against the Appellant, Chris K., and his surety.

_____
J. STEVEN STAFFORD, JUDGE