IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 23, 2015

IN RE J.R.C.

Appeal from the Juvenile Court for Campbell County
No. J2013-364     Joseph M. Ayers, Judge

No. E2014-00830-COA-R3-PT-FILED-APRIL 27, 2015

In this parental termination case, the Department of Children's Services (DCS) took emergency custody of J.R.C. (the Child) following the arrest of his mother, B.C. (Mother) on charges of (1) promoting the manufacture of methamphetamine and (2) child neglect. The Child was adjudicated dependent, neglected, and severely abused. After a trial, the court terminated Mother's parental rights after finding, by clear and convincing evidence, that (1) grounds for termination were established, and (2) termination is in the best interest of the Child. Mother appeals and challenges each of these determinations. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

R. Keith Hatfield, Knoxville, Tennessee, for the appellant, B.C.

Robert E. Cooper, Jr., Attorney General and Reporter, and Mary Byrd Ferrara, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

I.

The Child was born to Mother in April 2012. No father is listed on the birth

certificate.[1]  The Child remained continuously in Mother's custody until Mother's arrest on June 6, 2013, for allowing methamphetamine to be manufactured in her home with the Child present.  DCS immediately placed the Child in foster care. A urine screen revealed there was methamphetamine in his system, and a hair follicle test confirmed positive results dating back 90 days.   Following her arrest, Mother remained in jail for a total of twelve days, until June 18, 2013.  In October 2013, Mother was convicted pursuant to her guilty pleas of promotion of methamphetamine manufacture, simple possession of a Schedule II controlled substance, and child neglect.  She was placed on supervised probation for a period of four years and granted judicial diversion.

In July 2013, DCS developed a permanency plan with a goal of returning the Child to Mother.  On August 7, 2013, DCS filed a petition to terminate Mother's rights to the Child.  The petition alleged two grounds for termination – abandonment by wanton disregard and severe child abuse.  On November 27, 2013, following an adjudicatory hearing, the juvenile court declared the Child dependent, neglected and severely abused.  Trial on the termination petition took place on February 6, 2014.  Regarding her criminal convictions, Mother admitted that she had allowed a third party to manufacture methamphetamine in the home she shared with the Child.  In return, she was paid $50 and given drugs for her own use.  According to her testimony, Mother began using methamphetamine three years earlier and regularly smoked it some three times a week.  Mother said she stopped using methamphetamine while pregnant with the Child, but resumed her drug habit when the Child was two months old.  After the Child's removal, she stopped smoking methamphetamine but continued to smoke marijuana for a few more months, until September 2013.  As a result, she failed three drug screens administered by DCS after her release from jail.

The proof showed that Mother completed permanency plan tasks including parenting classes, and a mental health and drug/alcohol evaluations, and she was set to complete recommended intensive outpatient drug treatment within a week.  She had passed weekly drug screens since October 2013.  Mother had exercised regular visitation with the Child except during her brief time in jail.

The Child's DCS foster care worker, Christy Lester, described the Child as being "wild," with "no regulation of emotion whatsoever" and uncontrolled behavior when he initially entered state custody.  Since entering foster care, the Child had become "much more calm and loving," and was developing normally.  As a result of the severe abuse adjudication, DCS was relieved of exercising reasonable efforts to reunify Mother and

---

[1]In June 2013, the putative father, R.M., signed a "Waiver of Interest and Notice."  R.M. did not appear at trial and is not a party to this appeal.

the Child. Ms. Lester testified, however, that she remained in contact with Mother, encouraged her to work on her permanency plan tasks, and made efforts to assist her to secure suitable housing. Regarding Mother's interactions with the Child, Ms. Lester had observed visits and concluded that Mother loved Child but had very little control over him.

At the time of trial, the Child was nearly two. He had remained in the same foster care home throughout the nine months since his removal. Ms. Lester observed that he was "very attached" to his foster parents, particularly his foster mother. The foster mother had worked with the Child and he had progressed from the "violent" behavior he showed initially – throwing objects, biting, pulling hair and otherwise trying to harm himself or others – to age-appropriate play and an ability to better control his emotions. Since accepting the Child into their home, the foster parents had become interested in adopting him.

For her part, Mother had lived in three different places since the Child's removal. At the time of trial, she was living with a friend of her mother, but testified she had arranged to rent an apartment of her own with assistance provided through her outpatient drug treatment program. She was employed for the past three weeks at McDonald's. Prior to then, her last employment was a year earlier, when she worked at a marina for three months. Mother relied on food stamps and other government assistance and help from her parents for support.

On March 24, 2014, the trial court ordered Mother's parental rights terminated. The court found that the ground of severe abuse was clearly and convincingly established as reflected by the November 2013 adjudicatory order. The court found that the remaining ground alleged – abandonment by wanton disregard – was not established.[2] The court further found, also by clear and convincing evidence, that termination of Mother's parental rights is in the Child's best interest. Mother filed a timely notice of appeal.

II.

As taken verbatim from her brief, Mother presents the following issues for our

---

[2]Tenn. Code Ann. § 36-1-113(g)(1) provides for "abandonment by the parent or guardian" as a ground for termination. "Abandonment" is defined, in relevant part, as when "a parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and ... the parent ... has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." Tenn. Code Ann. § 36-1-102(1)(A)(iv).

review:

> 1. Did the trial court err by terminating the Mother's parental rights even though [DCS] failed to allow [M]other the opportunity for reunification . . . by prematurely filing [a] Petition to Terminate Parental Rights?
>
> 2. Did the trial court err by finding by clear and convincing evidence that it was in the best interest of [the Child] to terminate the Mother's parental rights?

### III.

With respect to parental termination cases, this Court has observed:

> It is well established that parents have a fundamental right to the care, custody, and control of their children. While parental rights are superior to the claims of other persons and the government, they are not absolute, and they may be terminated upon appropriate statutory grounds. A parent's rights may be terminated only upon "(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interest[ ] of the child." Both of these elements must be established by clear and convincing evidence. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

*In re Angelica S*., E2011–00517–COA–R3–PT, 2011 WL 4553233 at *11–12 (Tenn. Ct. App. E.S., filed Oct. 4, 2011) (citations omitted).

On our review, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is against those findings. *Id*.; Tenn. R. App. P. 13(d). Great weight is accorded the trial court's judgment of witness

credibility, which determinations will not be disturbed absent clear and convincing evidence to the contrary. *See* ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002). Questions of law are reviewed de novo with no presumption of correctness. ***Langschmidt v. Langschmidt***, 81 S.W.3d 741 (Tenn. 2002).

IV.

First, Mother challenges the trial court's finding of sufficient evidence to establish grounds for termination. Her precise argument, however, is somewhat difficult to discern. Her statement of the "issues presented for review" notwithstanding, she takes the position that "[t]he trial court erred by terminating . . . Mother's parental rights even though [DCS] failed to produce sufficient evidence of Mother's willful abandonment due to incarceration." The substantive portion of her argument, in its entirety, is as follows:

> Mother was incarcerated in the Campbell County Jail for a period of 12 (twelve) days from June 6, 2013 through June 18, 2013.[3]
>
> Proof produced at the Termination Hearing showed that Mother had sole custody of the minor child since his birth up to and until her arrest on June 6, 2013.
>
> Mother avers that the Department was premature in the filing of their petition to terminate parental rights on August 7, 2013 given that she was not convicted of any criminal offenses until October 7, 2013. The department should have made a best effort attempt at reunification of the parent and child upon her release from custody [on] June 18, 2013.
>
> Mother argues that the evidence presented at trial failed to establish willful abandonment due to incarceration.

As we have noted, DCS's petition alleged only two grounds for termination: severe child abuse and abandonment by wanton disregard. In setting out its findings, the trial court expressly concluded, (based on evidence indicating that she was jailed incident to her arrest only until being released on bond and that she was sentenced to no jail time upon her conviction), that Mother was not "incarcerated" for purposes of establishing abandonment as defined in Tenn. Code Ann. § 36-1-102(1)(A)(iv). Accordingly, the trial

---

[3] Citations to the record as set forth in Mother's brief have been omitted.

court concluded that abandonment by wanton disregard was not established in Mother's case.[4] In granting the petition, the court relied instead upon the finding that Mother committed severe abuse against the Child as "a sufficient ground to terminate her parental rights to the child."

In this manner, the court clearly terminated Mother's parental rights on the sole ground of severe abuse. We are therefore at a loss to understand Mother's singular focus on abandonment by wanton disregard in contesting grounds for termination.

Although Mother does not challenge severe abuse as grounds for termination, we have undertaken our review mindful that, at a minimum, a single statutory ground must be clearly and convincingly established in order to justify a basis for termination. *In re Audrey S*., 182 S.W.3d 838, 862 (Tenn. Ct. App. 2005). Tenn. Code Ann. § 36-1-113(g)(4) provides for the initiation of parental termination proceedings, in relevant part, as follows:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights . . . to have committed severe child abuse against the child who is the subject of the petition . . . .

In turn, Tenn. Code Ann. § 37-1-102(b)(23)(D) (2012) defines "severe child abuse," in relevant part, as "[k]nowingly allowing a child to be present within a structure where the act of creating methamphetamine . . . is occurring[.]"

In the present case, the trial court previously found, by clear and convincing evidence, that the Child was severely abused by Mother "in that she knowingly allowed

---

[4] In concluding its consideration of the abandonment by wanton disregard, the trial court further stated:

> The Court, having found that [Mother] was not incarcerated within the meaning of the statute, need not determine whether [Mother] engaged in conduct prior to incarceration that exhibited a wanton disregard for the welfare of the child. In the interest of preparing a complete record in the event of an appeal, however, and assuming that [Mother] was incarcerated during all or part of the four (4) months immediately preceding the institution of this action, the Court finds that there was sufficient evidence that [Mother] engaged in conduct prior to incarceration that exhibited a wanton disregard for the welfare of the child.

the child to be present within a structure where the act of creating methamphetamine . . . is occurring." The court therefore decreed the Child "a severely abused child . . . specifically, as defined by Tenn. Code Ann. § 37-1-102(b)(23)(D), . . . and that the severe abuse finding is as to [Mother]." Mother did not appeal the November 2013 adjudicatory order. As the State correctly contends, the order is thus final, and the severe abuse finding is established as a matter of law.

In short, grounds for termination were conclusively established by the adjudicatory order and its finding of severe child abuse. The trial court did not err in terminating Mother's rights based on her severe abuse of the Child.

V.

Having affirmed the trial court's finding that grounds for termination exist, we next consider the issue of the Child's best interest. As we have noted, before terminating a parent's rights, a court must determine that two things have been clearly and convincingly proven – "not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). We are guided on our review by the list of non-exclusive factors enumerated in Tenn. Code Ann. § 36-1-113(i). Those factors are as follows:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to affect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

This Court has observed that "[t]he above list is not exhaustive and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *Dep't of Children's Servs. v. P.M.T.*, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App. E.S., filed Sept. 15, 2006)).

In the case at bar, the trial court expressly considered each of the statutory factors and concluded that several weighed in Mother's favor. This conclusion, however, did not end the court's analysis. The court further reasoned, in relevant part, as follows:

> In summary, factors 1, 2, 3, and 4 weigh in favor of [Mother]; factors 6, 7, and 9 weigh against [Mother]; and factors 5 and 8 are inapplicable to the case at bar. It would appear that termination of [Mother's] parental rights would not be in the child's best interest because four of the factors weigh in her favor and three weigh against her. Determining a child's best interest, however, is not simply a matter of adding up the factors and declaring a winner.
>
> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration

of one factor may very well dictate the outcome of the analysis.

*In re Audrey S*., 182 S.W. 3d 838, 878 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W. 3d 187, 194 (Tenn. Ct. App. 2004).

In this case, two of the factors weighing against [Mother], factors six (6) and seven (7), are particularly egregious. [Mother] allowed a third party to manufacture methamphetamine in her home while the child was present in the home. Upon removal, the Department's case worker took the child to a hospital where he was screened for controlled substances. A urinalysis detected the presence of methamphetamine. Christy Lester, the Department case worker, testified at trial that a subsequent hair follicle test also indicated the presence of methamphetamine. As a result of these facts, this Court has previously found [that Mother] severely abused her child. . . . At trial, [Mother] testified as to her drug use and her efforts at rehabilitation since the child's removal. The Court acknowledges her remarkable progress in the eight months since the child's removal, but [Mother], by her own testimony, has relapsed in the past and the Court cannot find with any degree of certainty that she will not relapse in the future and, as a result, . . . be consistently unable to care for the child in a safe and stable manner. These factors are more relevant to the unique facts of this case, and should be accorded more weight than the other factors due to the circumstances of this particular child and this particular parent. The Court, therefore, finds that termination of [Mother's] parental rights is in the best interest of the child.

In this manner, the trial court properly considered the evidence in light of the relevant law. The court placed a heavy emphasis on the extremely dangerous living environment Mother created for the Child as the result of allowing methamphetamine to be manufactured in their home. In addition, the court was unable to conclude, based on her admitted resumption of her use of the drug that Mother would be able to provide appropriate care for the Child on a consistent basis going forward. The proof was to the effect that in the not-so-distant past Mother was able to cease her illicit drug use during her entire nine-month pregnancy with the Child, but thereafter resumed her habit within a

month of becoming a parent and the Child's sole care-giver.

The facts do not preponderate against the trial court's findings in support of its determination of the Child's best interest. As properly viewed from the Child's perspective, the evidence clearly and convincingly establishes that it is in his best interest for Mother's parental rights to be terminated. We therefore uphold the termination order.

VI.

The judgment of the trial court terminating Mother's parental rights to the Child, J.R.C., is affirmed. Costs on appeal are taxed to the appellant, B.C. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE